## Rudolph Stecher Brewing Company, Appellant, v. John E.. Carr, Appellee.

1. EVIDENCE, § 472*—*when proof beyond a reasonable doubt required in civil cases.* Where the defense of compounding a crime is relied upon to defeat the plaintiff's claim, the burden of proof is upon the defendant to prove the criminal offense alleged beyond a reasonable doubt.

2. COMPOUNDING FELONY,—*what does not constitute.* The mere acceptance of money or property in an amount sufficient to compensate the private injury is not of itself sufficient to constitute the offense of compounding a crime.

3. CONTRACTS, § 132*—*when illegality as compounding felony not established.* In an action against the maker and indorser of a check given in settlement of two other checks, *held* that an agreement to compound the crime of "confidence game" was not established beyond a reasonable doubt.

4. COMPOUNDING FELONY,—*what does. not constitute.* The mere consenting that a defendant go upon his own recognizance does not amount to the compounding of a crime.

Appeal from the Circuit Court of Williamson county; the Hon. BENJAMIN W. POPE, Judge, presiding. Heard in this court at the October term, 1914. Reversed and remanded. Opinion filed May 1, 1915.

HOSEA V. FERRELL and WILLIAM H. WARDER, for appellant.

GEORGE W. SAWYER, for appellee.

MR. PRESIDING JUSTICE McBRIDE delivered the opinion of the court.

Judgment was rendered in the court below against appellant, to reverse which judgment this appeal is prosecuted.

It appears from the record in this case that at some time prior to February 28, 1913, Frank Sarafin was indebted to appellant for beer purchased and had ex-

ecuted to appellant two checks, one for $200 and one for $300, which had not been paid, and at the date aforesaid aggregated $502.32, the amount of the check in question; that prior to said date an attorney by the name of Isaac K. Levy had received from appellant these checks and had determined, as he said, that the said Sarafin was guilty of the crime of confidence game in giving such checks; that after consulting with the State's Attorney of Williamson county a complaint was filed charging Frank Sarafin with the crime under the statute known as the "Confidence Game." He was arrested and brought before R. O. Deason, a justice of the peace, for examination on February 28, 1913. At that time the said Levy represented the People and John E. Carr represented Mr. Sarafin. At this time Sarafin waived examination, entered into his personal recognizance for appearance at the next term of the Circuit Court of Williamson county and gave the Rudolph Stecher Brewing Company his check for $502.32, which was indorsed by the appellee, John E. Carr. The check was presented in the usual course of business for payment, protested, but such check was not paid by either Sarafin or appellee, and this suit was instituted against the appellee to recover the amount of this check. The case was tried before the judge without a jury and resulted in rendering judgment against the appellant for costs.

The declaration contained a special count declaring upon the check and also the common counts, but before the conclusion of the case the special count was withdrawn and the case proceeded to trial upon the common counts. The defendant filed the general issue and three special pleas. The first special plea denied liability because of failure to give appellee, as indorser, notice of the non-payment of the check as required by statute. The third and fourth pleas aver, in effect, that the check was given for the compounding of a felony, and was therefore void.

It appears from the propositions submitted to the trial court that the issue as disclosed by the first special plea was found in favor of the appellant, and that the cause was determined against the appellant upon the second and third special pleas. The court held that the check in question was given for the compounding of the crime of confidence game and therefore void.

The pleas upon which the court found the issues for the appellee aver a criminal offense, to wit, that of compounding a crime, which, if proven, would subject the offender to a fine of double the value of property received. We think that the law is well settled in this State that where the defense of compounding a crime is relied upon to defeat the plaintiff's action that then the burden is upon the defendant to prove the criminal offense alleged beyond a reasonable doubt, and that it is not sufficient that it be proven by a preponderance of the evidence. *Germania Fire Ins. Co. v. Klewer,* 129 Ill. 599; *Grimes v. Hilliary,* 150 Ill. 146.

The mere acceptance of money or property in an amount sufficient to compensate the private injury is not of itself sufficient to constitute the offense of compounding a crime. It is provided by section 43 of chapter 38 of the Revised Statutes (J. & A. ¶ 3543) that: "Whoever takes money, goods, chattels, lands or other reward, or promise thereof, to compound any criminal offense, shall be fined in double the sum or value of the thing agreed for or taken; but no person shall be debarred from taking his goods or property from the thief or felon, or receiving compensation for the private injury occasioned by the commission of any such criminal offense."

The evidence in this case discloses, and it is not disputed, that Frank Sarafin was at that time indebted to appellant, as one of the witnesses said, in a greater amount than $502.32. Giving to this law the most favorable construction for the appellee, it must appear from the evidence, beyond a reasonable doubt, that

there was an agreement entered into by the agent of appellant not to prosecute the criminal offense and that the check was given in consideration of this promise. Does it appear from the evidence beyond a reasonable doubt that such an agreement was entered into? It was testified by the appellee, John E. Carr, that he, "Mr. Sarafin, and Mr. Levy, walked out to one side of the office and had some talk, and finally it was arranged that Sarafin should sign the check and I would indorse the check, and that he would be released on his own recognizance, and Levy said, 'that will be the end of it, of course, we will do nothing more to it.'" On cross-examination he says: "This conversation was outside of the railing surrounding the magistrate's desk. We went out and agreed upon this proposition and came back and I took a check; we didn't sit down." This is the only evidence that any such conversation was had or statement made by Mr. Levy. Mr. Levy denies emphatically that he had any such conversation, and denies that he told Carr, "that will be the end of it, of course, we will do nothing more to it"; and denies that he went outside of the railing surrounding the magistrate's desk in company with Carr or Sarafin; and denies that he had any conversation with them outside of the railing surrounding the magistrate's desk, and in this he is corroborated by the sheriff, C. E. White, in which he says: "At the time Mr. Carr and Mr. Sarafin were talking on the outside of the railing, Mr. Levy was on the inside of the inclosure. He did not talk with Mr. Sarafin on the outside of the inclosure, nor did he talk with Mr. Sarafin and Mr. Carr on the outside of the railing, nor did he talk with Mr. Carr on the outside of the inclosure." This witness says that he had Sarafin in charge and that he could see Sarafin and Carr all the time, and further says: "I remember watching Mr. Sarafin when he went to talk with Mr. Carr as that was my business. I could see Sarafin and Carr all the time,

and Mr. Levy did not talk with them. Sarafin and Carr came back in the inclosure together. After they had their conversation and came back I didn't see Mr. Levy and Mr. Carr have any talk.'' This witness further says: ''After they (Sarafin and Carr) came back from the conversation something was said about giving a check for $100 and Mr. Levy said, 'Why not give one check for the whole amount?' and he said, 'All right.' I didn't pay particular attention to the conversation as to the amount of money that was involved. I understood from their conversation and the check that was given, that Mr. Sarafin was settling a debt for the two checks that were involved in the charge preferred against him for confidence game.'' The testimony of the Justice of Peace, R. O. Deason, tends to corroborate the statements of Mr. Levy in this matter. True, he says that Levy and Carr had a conversation in his office but he did not understand what they said, but he also says that: ''It was Mr. Carr and Mr. Sarafin who went around back by the door that leads to the rear room and then they came back in the rail. Mr. Levy was standing just in front of my desk. He talked with Mr. Carr and Mr. Sarafin just before they went outside of the rail, and when they came back they talked again. I don't think Mr. Levy went outside of the rail and talked with Mr. Carr and Mr. Sarafin, but they might have stopped by the gate that leads into the office, all three of them, and perhaps the sheriff with them. If they had a conversation about that matter, I don't know what passed between them.'' It appears to us that the preponderance of the evidence as to the conversation and the place where Carr says it occurred is with the appellant, and that it is very far from being proven beyond a reasonable doubt. Carr is an interested witness and the record does not disclose that Levy or White have any financial interest in the result of this suit.

It is further contended that it appears from the evidence that Mr. Levy consented to the defendant going

upon his own recognizance. There is evidence tending to show this fact. He claims, however, that this all occurred after the check was given. It appears at all events that before Sarafin was released the State's Attorney was consulted and the justice of the peace concluded that he would in good faith appear at court, and permitted him to go upon his own recognizance; but even if Levy did consent that he might go upon his own recognizance, and did not agree that Sarafin would not be prosecuted further, this would not be sufficient to defeat this action, for the mere consenting for the defendant to go upon his own·recognizance would not be the compounding of a crime. We think it is quite clear from this evidence that the check in question was not given as a reward for not prosecuting, but was rather in payment of the debt, and that if consent was given that he might go upon his own recognizance it was a mere incident and would not of itself be sufficient to warrant a court in saying that it was compounding a crime. It is said by our Supreme Court: ''The rule is well settled that such a note is illegal, but here the note was given, not as a reward for not prosecuting, but for a debt due from Ford to Furch, and that being the only and true consideration, it is not like a note given simply to prevent the prosecution for a misdemeanor or felony. That would be a different question; nor is any question before us whether Furch and his attorney incurred any liability by using the criminal process to influence Ford to give the note with security.'' *Ford v. Cratty,* 52 Ill. 313. We have examined the authorities cited by counsel for appellee and find that most of them are either cases where no debt existed and the money paid was given as a reward for not prosecuting, or that the obligations were secured under duress, and as no such questions arise in this case, we do not deem these authorities as applicable.

There were several propositions of law and fact submitted to the court upon the hearing, but all of them

except the ones involved in the question here determined were held for the appellant, and as to those not so held this opinion fully disposes of the questions therein proposed.

We are of the opinion that the court erred in holding under this evidence that the check in question was given for the compounding of a crime and in rendering judgment against the appellant for costs. The judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*