## 2465. HOLLAND v. MUTUAL FERTILIZER COMPANY.

1. Where notice is given, in accordance with the act of 1900 (Civil Code of 1910. § 4252), of an intention to bring suit upon a promissory note which provides for the payment of attorney's fees, and where suit is not filed until the last return day of the term of court specified in the notice, tender of the principal and interest upon the note on that day, but after the suit has been filed, will not relieve the debtor from the obligation to pay attorney's fees.

2. The delivery of a check, in the absence of an express agreement to that effect, is not payment until the check is itself paid, and where an attorney charged with the collection of a promissory note for his client accepts a check in payment of the note, he does so at his own risk. Consequently the offer of a check in payment is not equivalent to a tender of payment. And this is true even though the check has been certified by the cashier of the bank upon which it is drawn.

3. A "banker's check," as popularly understood, is a check, draft, or other order for the payment of money, drawn by a duly authorized officer of a bank upon either his own bank or some other bank in which funds of his bank are deposited. A "certified check" is one drawn by a depositor upon funds to his credit in a bank, which a proper officer of the bank certifies will be paid when duly presented for payment.

DECIDED FEBRUARY 7, 1911.

Complaint; from city court of Statesboro—Judge Brannen. January 12, 1910.

*Brannen & Booth*, for plaintiff in error.

*R. Lee Moore, A. M. Deal, Johnston & Cone*, contra.

RUSSELL, J. The Mutual Fertilizer Company filed suit in the city court of Statesboro against M. M. Holland upon three promissory notes, alleging that the defendant was indebted thereon in the principal sum of $1,213.77, besides interest, and ten per cent. as attorney's fees. The defendant filed an answer, admitting the execution and delivery of the notes, and that the plaintiff was legal holder, but denying indebtedness for attorney's fees and for interest since return day, because of a tender of the principal and interest on return day. Two amendments to this plea were allowed. At the trial term the defendant's pleas were stricken, on objection, and judgment was rendered for the full amount of the principal, interest, and attorney's fees.

The only question raised by the record is as to the sufficiency of the tender made by the defendant, to relieve him from attorney's fees; and this presents two questions: (1) whether the tender was itself sufficient, and (2) whether it came too late. It is

scarcely necessary, under the facts set out in the amended answer, admitted by the demurrer to be true, to notice the sufficiency of the tender, for we are inclined to the view that the tender was. too late. There can be no question that the first offer made by the defendant to pay the principal and interest was not sufficient to amount to a tender. He offered to pay ·the principal and in- terest in a number of personal checks, which the plaintiff had the right to decline. The delivery of a check, in the absence of an express agreement to that effect, is not payment until the check is·itself paid, and where an attorney charged with the collection of a promissory note for his client accepts a check in payment of a note, he does so at his own risk. Consequently the offer of a check in payment is not equivalent to a tender of payment. And this is true even though the check has been certified by the cashier of the bank upon which it is drawn.

It is not denied that at that time suit had not been filed; and though it was on return day, we think that if the actual amount due had been tendered ·in money, the defendant would have been relieved from the payment of attorney's fees. According to the allegation of the amendment to the plea, when the plaintiff's at- torney declined the checks drawn by S. F. Ollif, Miss Alice Zetter- ower and himself for the amount of his indebtedness, he stated to the defendant that the latter must either bring the money or a banker's check for said debt. "The defendant then left said office and drew his own check on the Sea Island Bank of States- boro, Georgia, in favor of Johnston & Cone [attorneys for the plaintiff], for the full amount of said principal and interest, had the same certified by the cashier of the said bank, and later on the same day, namely June 17, 1909, about 4.30 o'clock p. m., de- fendant again called at the office of said attorneys and tendered to Mr. Howell Cone, as attorney for plaintiff, the aforesaid certi- fied check, which he declined to accept, although he previously stated to defendant that he must bring either the money or a banker's check." It is insisted that this was a good tender be- cause the defendant complied fully with the demand of the plain- tiff's attorney. In determining whether this set up a good de- fense as a plea of tender, and therefore as to whether the court erred in striking the defendant's answer, what the defendant omitted to state in response to the plaintiff's demurrer must be

considered, as well as what was actually said. The defendant does not assert that he promised that he would return, or that upon such a promise the attorneys for the plaintiff promised to defer filing suit. It must be presumed, therefore, that the plaintiff's counsel had no reason to shape his conduct by anything that he might know or suppose would be the defendant's action in the premises. The defendant's answer does not inform us as to the hour when the first visit was made to the office of the plaintiff's counsel, but it states, as quoted above, that the defendant returned about four o'clock in the afternoon, when the second offer was declined, and it is stated that at that time the defendant was informed that the suit had been filed. In view of what is stated in the answer, and that the answer fails to state that the plaintiff's counsel made any promise to postpone filing the suit, it is clear to our minds that in filing it he acted in accordance with the rights of the plaintiff; and that the defendant would not have been relieved from the payment of the attorney's fees, under the allegations of the answer heretofore referred to, even if in addition thereto the defendant had alleged that upon the occasion of his second visit, he made a formal and legal tender of the exact amount of money due by him as principal and interest upon the notes.

The exact point seems to have been decided in *Harris* v. *Powers,* 129 *Ga.* 74 (58 S. E. 1038), in which it is said (p. 87) : "The amending act adopted a different scheme, which was to require notice of an intention to sue to be given at least ten days before suit should be brought, to allow the debtor until return day to pay the debt, and thus to save the creditor the necessity and expense of bringing suit at all. If he should voluntarily bring suit before return day, it would be at his own risk of being paid subsequently. To put the construction upon the act of 1900 which is insisted upon by counsel opposing the allowance of fees would make the act in substance conflict with itself. Thus it is required that the notice shall specify the term of the court to which suit will be brought. In order to bring suit to that term according to the notice, it must be brought on the return day at the latest. If it is not then brought, it can not be brought to that term, and a new notice would have to be given of a suit to another term. If the debtor is allowed until the last instant of the return day to make pay-

ment in order to avoid the necessity for the bringing of a suit, the incurring of attorney's fees, and the right to recover them, then the creditor could not know whether to bring his suit until after the return day had expired, and it was too late to sue. If the view above expressed of the purpose of the amendment is correct, it ought to be construed as a whole in harmony therewith. The right of the debtor to pay on or before return day and the necessity for the creditor to sue on that day, should both be considered in construing the act. In this light we think that the proper construction is that the debtor shall have until return day, and as much of that day as may elapse until the suit is actually filed." This would seem to plainly declare, as we intimated in the earlier portion of this opinion, that the words "on or before return day," so far as they relate to the return day itself, allow the debtor only so much of the day as precedes the filing of the suit. The learned counsel for the plaintiff insists that what is said on this subject in the *Harris* case, supra, is mere obiter, and not binding as authority. We think that even if it be admitted that the point was not directly involved in the case cited, it is nevertheless a proper expression of the legislative intention, and if the point was not ruled in that case, then, in the absence of a precedent, the ruling which we now make is supported by sound reason.

But even if the ruling of the trial judge was not based upon the assumption that the attorney's fees could not be avoided by payment or tender of payment after the filing of suit, we think it was still sound and correct, because the offer of the check, which was certified by the cashier of the bank, was not a legal tender. No matter how solvent the bank was, and though the bank was obligated by the cashier's certificate to pay the check when duly presented, a check is not payment until it is itself paid, unless it is agreed to be accepted as payment. Civil Code (1895), § 3720. If the statement of the plaintiff's counsel that the principal and interest would have to be paid in money or in a banker's check be construed as such a proposition as would have bound the plaintiff's attorney in case it had been accepted and acted upon by the defendant, even then, according to the allegation of the plea, the defendant did not comply with the proposition which was made him, because he did not bring either the

money or a banker's check. We do not know that· the phrase "banker's check" has any place in legal or financial terminology, but, giving the term its popular significance, it can only mean a check drawn by a banker, as distinguished from a bank check, which may be drawn on a bank by anybody. As we understand it, a banker's check would be one in which the drawer was a banker, or the duly authorized agent of 'a bank, drawn on funds either in the bank of which he was an officer, or on those of some correspondent ·bank in which .his bank had funds deposited or an account entitling the bank he represented to a credit. If such a check as this had been made payable to the plaintiff or its counsel and delivered to them, it would not have been within the power of the debtor to revoke it, or to stop its payment by notice. It would have been a bill of exchange purchased by him. A certified check is one as to which the proper officer of a bank in which a depositor has funds on deposit certifies that it will be paid when properly and duly endorsed.

The members of this court have only a passing acquaintance with money. We see but little of it, nor see that little long, and hence we will not attempt to decide that there is any material difference between a banker's check and a certified check. All checks look alike to us, provided our creditors will accept them. However, if there is a difference in accord with the popular understanding to which we have referred, the defendant did not bring a banker's check when he brought his own check, certified by the officer of the bank; and from our view of the case, even if the two are the same, the tender came too late, for the suit had already been filed.        *Judgment affirmed.*