DANIEL SUTTER, JR., appellant,

*v.*

SECURITY TRUST COMPANY, respondent.

[Submitted March 24th, 1924.    Decided October 27th, 1924.]

1. A drawer of a check which has been certified at his request before delivery may recall the same and require the certifying bank to refuse payment to the payee named therein if such payee is not a *bona fide* holder for value, but has obtained the check by fraud, perpetrated by him upon the maker.

2. Upon suit by the payee named in the check against the certifying bank, upon its refusal to pay, after notice from the drawer to stop payment for reasons showing the payee not to be a *bona fide* holder thereof for value, the bank can urge and have the benefit of any defense that the drawer could have against such payee, establishing that such payee obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration.

3. The right of the maker of a check, certified at his request before delivery, is the same against an indorsee holder, who is not a holder in due course, as is his right to stop payment against the payee who is not a *bona fide* holder for value.

4. Such rule has no application to a certified check, held by a payee who is a *bona fide* holder for value, nor to a holder in due course, although certified at the request of the drawer before delivery, nor where the check, after delivery, is certified at the request of the payee or holder.

On appeal from a decree in the court of chancery.

*Mr. William J. Kraft,* for the appellant.

*Messrs. French & Richards,* for the respondent.

The opinion of the court was delivered by

CAMPBELL, J.

Appellant had a checking account with respondent, and on March 25th, 1922, having a balance therein to his credit of $1,034.41, drew a check thereon to the order of his wife for

$1,000, and on the same date procured the certification thereof by respondent. On the afternoon of the same day appellant delivered the certified check to his wife in consideration of a certain agreement between them concerning a separation. In such agreement the wife agreed, amongst other things, not to remove certain furniture from appellant's home. March 25th was Saturday, and that night, after delivery of the check, the wife, in violation of her agreement, removed the furniture. On Monday morning, March 27th, appellant acquainted the treasurer of respondent with the circumstances, and requested that payment be stopped upon the check, and claims to have had such treasurer's promise so to do, although this is denied by that officer. Subsequently, on the same day, appellant, accompanied by his attorney, went to the banking house of respondent, there discussed the matter with its president and treasurer, and signed and delivered to the respondent a request, in writing, to stop payment on the check.

Appellant insists that on March 27th, subsequently to his signing the stop-payment request, his wife presented the check to respondent for payment, and payment was refused by it because payment had been stopped. Respondent's treasurer asserts that such presentation was made by appellant's wife on March 27th, but before the giving of the stop-payment request, and that Mrs. Sutter was told that her husband had informed the treasurer that there was some trouble existing between himself and his wife respecting the check, and that payment of the check should be deferred for a few days, and that Mrs. Sutter was therefore requested to postpone presentation of the check until Mr. Sutter could be seen.

Whatever the truth concerning the presentation of the check for payment by Mrs. Sutter may be, she did on the same day, March 27th, go to her brother in Philadelphia, endorse the check over to him, and he deposited it in his bank in that city.

On March 30th the check was presented to respondent for payment through the Federal Reserve Bank of Philadelphia,

and payment refused and check protested on the ground of "payment stopped."

On March 31st the Union National Bank of Philadelphia, where the check had been deposited, inquired of respondent why it had refused to make payment, and it was advised that it was a deferred payment, and that it would be a matter of only a few days when it was expected the check would be paid.

Upon request, appellant called at respondent's bank; was told that the check was in the hands of an innocent third person, for value, and that respondent proposed to pay the same, and that unless he indemnified respondent the check would be paid.

Appellant declined to indemnify respondent, and on April 6th the check was again presented for payment, and was paid.

Demand was then made by appellant upon respondent for the payment to him of his alleged balance of $1,034.41, without deduction, for the payment of the certified check of $1,000. Such demand was refused except as to the balance of $34.41.

Suit was then instituted by appellant against the respondent for $1,034.41, in the supreme court.

The respondent answered and the cause was, by order, removed to the court of chancery, where, after hearing, a decree denying relief was advised by Vice-Chancellor Leaming. It is from such decree that the present appeal is taken.

A check may be certified by the bank, upon which it is drawn, at the request of the payee or holder, and, when such is the case, the situation is as we held in *Times Square Auto Co.* v. *Rutherford National Bank, 77 N. J. Law 649*, and the maker cannot, thereafter, legally require the certifying bank not to pay, and, in a suit by the holder against the bank for the amount of the check, the bank cannot have the benefit of any defenses which the maker might have against such payee or holder, because the instrument, by such method of certification, has then been discharged to the same extent as if it had been paid by the certifying bank.

There is another method of certification such as was employed in the case now before us, and that is at the request of

the drawer or maker of the check before it reaches the hands of the payee therein named. When such a certification takes place, and there is a delivery to the payee, under circumstances and conditions making him a *bona fide* holder, for value, without notice of defect therein, then, also, the instrument is thereafter beyond recall by the maker as against such a payee.

Upon this all the authorities are in agreement. *5 Cyc. 540 ¶ b; 7 Corp. Jur. 705 § 432,* and cases thereunder cited; *Dan. Neg. Ins. (6th ed.) § 1603,* and cases cited; *20 L. R. A. (N. S.) notes 290.*

When the certification is made at the request of the maker, the obligation of the certifying bank is to make payment to the payee named therein, if such payee is a *bona fide* holder for value, or to a holder in due course, and such is the contract which the bank, in certifying, undertakes to perform for the maker, and toward and in favor of such a payee, or a holder in due course.

"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto * * *." *Neg. Ins. Act, supra, § 16; 8 Corp. Jur. 203 § 333.*

"There can be no valid delivery where it was obtained by fraud, duress or mistake.". *Neg. Ins. Act, supra, § 55; 8 Corp. Jur. 203, 204 § 334.*

"There must also be a valid, valuable consideration." *8 Corp. Jur. 210 § 342.*

"There must be a legal consideration. It is well established that a contract founded on an illegal consideration cannot be enforced, and bills and notes are not excepted from the operation of this rule, but, when founded on such considerations, these instruments, as between the immediate parties and their privies, are always void." *8 Corp. Jur. 241 §§ 380, 384.*

"A bill of exchange may be revoked by the drawer before its acceptance or transfer to a *bona fide* holder for value." *8 Corp. Jur. 64 § 89.*

"The provisions of the Negotiable Instruments act, fixing the ways in which a person originally liable may be dis-

charged, does not imply that the ordinary defenses, which go to the original liability of the party, such as fraud, duress or illegality in respect to the consideration, may not be resorted to as before, since the term discharge implies an original obligation, whereas, if fraud, duress or illegality intervened at the inception of the instrument, the maker never was liable." *8 Corp. Jur. 611 § 849.*

We hold, therefore, that a drawer of a check, which has been certified at his request before delivery, may recall the same and require the certifying bank to refuse payment to the payee named therein if such payee is not a *bona fide* holder, for value, but has obtained the check by fraud perpetrated by him upon the maker. And further, that upon suit by the payee named in the check against the certifying bank, upon its refusal to pay, after notice from the drawer to stop payment, for reasons showing the payee not to be a *bona fide* holder thereof, for value, the bank can urge and have the benefit of any defense that the drawer could have against such payee, establishing that such payee obtained the instrument, or any signature thereto, by fraud, duress or force and fear, or other unlawful means, or for an illegal consideration; and also that the right of the maker of a check, certified at his request before delivery, is the same against an endorsee holder, who is not a holder, in due course, as is his right to stop payment against the payee who is not a *bona fide* holder, for value. Such rule, however, has no application to a certified check held by a payee who is a *bona fide* holder, for value, nor to a holder in due course, although certified at the request of the drawer before delivery, nor where the check, after delivery, is certified at the request of the payee or holder.

In the case now before us it was insisted and urged that Edwin R. Mack, the brother of Mrs. Sutter, the payee named in the check, and who was the holder thereof as the endorsee of the payee, was a holder in due course, and for that reason the respondent was justified in paying the amount of the check to him. That is so if he was a holder in due course as contemplated and provided by the Negotiable Instruments

act, but, upon the facts, the court below found that he was not a holder in due course, and with that finding we agree. It becomes necessary, therefore, to consider whether the facts disclose such a situation, that the bank, by reason of its certification, would have been justified in making payment to Mrs. Sutter, the payee, upon proper presentation of the check by her, notwithstanding the service of the notice to stop payment by her husband, the maker, and a disclosure by him to the officers of the bank of the condition upon which the check was obtained by Mrs. Sutter.

The facts in the case cause us to reach the conclusion, as did the court below, that there is nothing to justify us in holding that Mrs. Sutter, the payee, procured the check by any fraud perpetrated by her upon her husband. For this reason we conclude that the bank would have been justified in making payment of the check to Mrs. Sutter, upon presentation thereof by her. If the bank was not justified in making payment to Mrs. Sutter, the payee named in the check, then it was not justified in making payment to Mr. Mack, the endorsee, who, we have found, under the facts here presented, was not a holder in due course, and the stop-payment notice of the maker, under such conditions, would operate in favor of the maker against him as such holder, and would place the bank in a position where it was not justified in making payment to such an endorsee holder.

As the bank was, under the facts presented, justified and legally called upon to make payment to Mrs. Sutter, upon presentation and demand, as against the notice of the maker of the check to stop payment, its obligation, under the facts, was likewise to make payment to the endorsee holder, Mr. Mack.

The decree below is affirmed, with costs.

*For affirmance*—The Chief-Justice. Trenchard, Parker. Minturn, Kalisch, Black, Katzenbach, Campbell, Lloyd, White. Gardner, Van Buskirk, Clark, McGlennon, Kays—15.

*For reversal*—None.