40381, 40412.   WRIGHT et al. v. TRUST COMPANY
OF GEORGIA; and vice versa.

Decided December 5, 1963—
Rehearing denied December 18, 1963.

*Schwall & Heuett, Emory Schwall,* for plaintiffs in error.

*King & Spalding, Charles H. Kirbo, Henry Hall Ware, III,* contra.

RUSSELL, Judge. ■ A motion for a judgment notwithstanding the verdict should be made in accordance with the grounds of the antecedent motion for a directed verdict. *Grigsby v. Fleming,* 96 Ga. App. 664 (101 SE2d 217); *Durden v. Henderson,* 212 Ga. 807 (96 SE2d 362); *Sunbrand Supply Co. v. Garment Finishing Equipment Corp.,* 99 Ga. App. 72 (107 SE2d 680). One of the grounds of the motion for a directed verdict was that the plaintiff (who had elected to proceed in tort) offered no evidence of the commission of a tort by the defendant. The motion for judgment n.o.v. contained the grounds that the evidence demands a finding the defendant acted in good faith, there was no evidence the plaintiff was injured, and the uncontradicted evidence shows the plaintiff is not entitled to recover. The tort which is the gravamen of the suit is that the defendant made fraudulent misrepresentations on which the plaintiff relied to his injury in that it issued the direct obligations of the bank to the plaintiff in bad faith intending at the time of issuance not to honor them. There can be no evidence to sustain a verdict as to such a tort without evidence from which the jury is authorized to find the plaintiff is entitled to recover: that is, that a tort was committed, that it was in bad faith, and that the plaintiff was injured thereby. The grounds of the second motion are sufficiently predicated on the first to allow consideration of the motion for judgment notwithstanding the verdict on its merits.

■ One of the issues in the case is whether the evidence demands a finding that George, the maker of the check, ordered payment stopped prior to its original certification by the defendant. This witness testified: "I had occasion to stop payment . . . I believe the 6th of November, 6th or 7th, in the East Atlanta Branch, around 9:30 in the morning. I don't believe it could possibly have been the 7th . . . I'm sure it was the 6th. I got that acknowledgment on a Tuesday, it was on the 7th,

I could have gotten it the 8th or 9th . . . It could not have been November 8th I gave them that undated stop payment order, it could not have been on the 7th, it was on the 6th. It was on a Monday. I know that it was on a Monday morning that the stop payment was turned in down there. That would have been November 5th according to this calendar. It was on a Monday, I know. It was on the 5th. I don't know positively whether I entered the stop payment order on the 6th or 7th but I recall that it was on a Monday morning."

The plaintiff introduced in evidence a printed stop payment form signed by Howard L. George at the branch office ordering payment stopped on this check, which form was undated. The defendant introduced a like form filled in at the main office, dated November 6, 1962, at 10:10 a.m. requesting payment stopped on that date. The testimony was that the employee at the branch office, immediately on receiving the information, customarily telephoned it to the office where the depositor's account was located; that it was there noted on a stop payment request form and classified as either dangerous or nondangerous; that this one was classified nondangerous because the check was more than thirty days old, and accordingly the information was posted in the files in the main office bookkeeping department but the account itself was not flagged, so that if the check was presented for payment they would have no way of knowing that payment had been stopped. The witness recognized the handwriting of the employee who had filled in the request form and verified that this was according to standard procedure. There was also in evidence a properly identified acknowledgment of the stop payment order, which was the carbon copy of the original mailed to and received by George, dated November 7, and acknowledging receipt of the request dated November 6. No other evidence in any way sheds light on the time element.

It is contended that George's testimony as to the date on which payment was stopped is so confused and contradictory that it has no probative value, and it is true that his statements do not exclude the possibility that he might in fact have ordered payment stopped on November 7, which was the day the check was certified. The bank records, however, affirmatively show that

payment was stopped on November 6, but that because the customer's account was not flagged this fact went unnoticed until after the certification of the check by the bank. These documents were admissible under the Georgia business records statute and they are not contradictory of George's testimony, except that George thought he stopped payment on Monday rather than Tuesday before the check was certified on Wednesday. "It is true that when the proper foundation has been laid and business records have been admitted in evidence their weight and credit is for the jury . . . It does not follow, however, that business records when uncontradicted should be treated differently from any other kind of uncontradicted evidence. The statute, *Code Ann.* § 38-711, itself provides that it shall be liberally interpreted and applied. Books of account when admitted under such a statute are prima facie evidence of the facts they state, and when not contradicted or explained may become conclusive." *One in All Corp. v. Fulton Nat. Bank,* 108 Ga. App. 142, 144 (132 SE2d 116). In that case it was held that such records, uncontradicted, would be sufficient to sustain a directed verdict. The same rule would apply on the weight of such evidence to sustain a motion for judgment notwithstanding the verdict. The evidence thus establishes that the bank received instructions from its depositor to stop payment of the check on November 6, 1962, and that its certification of the check on November 7, was due to inadvertence because, the check being more than thirty days old, the customer's account had not been flagged with this information.

■ In assessing the obligations incurred by the defendant when it certified the original check and thereafter issued two treasurer's checks, the writer approaches the problem with the same trepidation betrayed by a judge of the same name called upon to decide substantially the same issue a half century ago.

"The Members of this court have only a passing acquaintance with money. We see but little of it, nor see that little long, and hence we will not attempt to decide that there is any material difference between a banker's check and a certified check. All checks look alike to us, provided our creditors will accept them." *Holland v. Mutual Fertilizer Co.,* 8 Ga. App. 714, 718

(70 SE 151). We make no distinction between a cashier's and a treasurer's check, and are convinced that those differences which exist between a certified check and a cashier's check are not material to this discussion. The same rights accrue as between the bank and the payee. Lummus Cotton Gin Co. v. Walker, 195 Ala. 552 (70 S 754). "A certified check has a distinctive character as a species of commercial paper and constitutes a new contract between the holder and the certifying bank., The funds of the drawer are, in legal contemplation, withdrawn from his credit and appropriated to the payment of the check, and the bank becomes the debtor of the holder as for money had and received." *McIntire v. Raskin*, 173 Ga. 746 (3c) (161 SE 363). The certification of a check by the bank at the instance of the payee amounts to a payment of the check as to all parties except the payee and the bank. *Thompson v. Thompson*, 203 Ga. 128 (2a) (45 SE2d 632); *Mitchell v. Asbury*, 94 Ga. App. 465 (95 SE2d 341). It is frequently likened to a bill of exchange accepted in advance. A cashier's check is the primary obligation of the bank. *Nissenbaum v. State*, 38 Ga. App. 253 (143 SE 776); *Bank of Statham v. National Bank of Athens*, 143 Ga. 293 (84 SE 966). "A cashier's check is a bill of exchange drawn by a bank upon itself. The bank by issuing the check incurs the same primary liability on the instrument as a bank certifying an ordinary check. When payment has been stopped on a draft given to the bank in exchange for its cashier's check, the bank has received no consideration for its own check and is liable on it only to a holder in due course." Paton's Digest, Vol. I, 1168, § 24. One technical difference is that a cashier's check amounts to a sale of the bank's credit, while a certification is an immediate assignment of the funds of the drawer as to which the bank is the debtor of the depositor. Smalley v. Queen City Bank, (Mo. App.) 94 SW2d 954. Another difference in the present case, which will not be further discussed, is that the notation on the original check, "To be deposited only on completion of real estate transaction" does not appear on the treasurer's checks. In the view we take of the case it becomes unnecessary to decide what effect this language had, if any, on the rights of the parties to this action.

By issuing the treasurer's check the defendant bank took upon itself the liability for payment and the maker's liability, so far as the *check* was concerned, was extinguished. If the bank had not received the stop payment order until after its certification of the check, this would have been no excuse for it to refuse payment, and had it refused under these circumstances it would not have been entitled to have the benefit of any defenses available to the maker. Sutter v. Security Trust Co., 96 NJE 644 (126 A 435, 35 ALR 938). On the other hand, if it had paid out funds because of an error in not flagging the account with the stop payment order, it might perhaps be subrogated to the rights of the maker; this question also it is unnecessary to reach. What definitely appears from the record is that the payee of the check received it as a broker's fee with instructions not to cash it until the completion of a certain real estate transaction; that after holding the check for several weeks he became apprehensive that payment on it would be stopped (whether rightfully or wrongfully does not appear) and at that time decided to have it certified, and the certified check later exchanged for a treasurer's check, which he caused to be deposited. By this time the defendant had discovered that payment had in fact been stopped on the original check and that it had no right to appropriate the funds of its depositor to payment, and it then stopped payment on the treasurer's check. As though that were not enough, it thereafter issued a second treasurer's check in exchange for the first, acting through a vice-president who testified that at the time of issuance he had no knowledge of the transaction and was laboring under the misconception that the treasurer's check had found its way into the hands of a holder in due course, which it had not, and payment on this check also was stopped. The petition alleges that all of these acts, and particularly the last, were done in bad faith, but there is nothing in the evidence to show bad faith except the acts themselves, all of which clearly stem from negligence, mistake, and misconception as to the state of the account rather than from an intention to injure the payee. Mere negligence is not bad faith, nor could it be bad faith for the bank to refuse to honor even its direct obligation if this was within its legal rights. The general view is that where the in-

strument (be it a check, bill of exchange, note, or whatever) is in the hands of the original payee, where no holder in due course is involved, where the payee has not suffered any detriment or changed his position because of reliance on the instrument, the bank may properly defend itself on the basis of mistake and want of consideration (good defenses under the Negotiable Instrument Law). Since it has no right to charge the account of its depositor a complete failure of consideration for the cashier's check results. Paton's Digest, Vol. I, 1169, § 24:2; Vol. III, 1281, § 9:1; 29 ALR, Anno., 140 and cases cited; 9 CJS 793, Banks and Banking, § 376; 10 Am. Jur. 2d 624, Banks, § 654; Mid-Central Towing Co. v. National Bank of Tulsa, (Okla.) 248 P2d 327. And this is true even though the original mistake was due to the negligence or laches of the bank. Yonkers Nat. Bank &c. Co. v. Yerks & Co., 254 NYS 543. If it should be argued that the issuance of the treasurer's check in exchange for the original check was such a "bankers check" or bank draft as to be the equivalent of money or payment the situation remains unchanged, because if the defendant had actually paid the money it might still recover it back on proof of mistake and want of consideration. "When a bank receives the funds of its depositors it becomes the debtor of such depositors and its primary duty as such is to pay such funds out only on the order of the depositors . . . If it pays funds on any other order it pays its own funds and where it shows that such payment was made through a mistake . . . it is entitled to recover such payment in an action for money had and received" provided that no estoppel is involved and no right is prejudiced. *Williams v. American Surety Co.*, 83 Ga. App. 66, 70 (62 SE2d 673).

We are not ignoring the fact that the plaintiff elected to proceed in tort rather than in contract, that mistake and want of consideration are not normal defenses against a tort action, and that the bank was undoubtedly negligent in issuing the treasurer's checks as well as in certifying the original check over the stop payment order. Tort actions may be founded on the breach of a duty arising from contract, but a mere breach unaccompanied by injury to the plaintiff will not sustain an action for more than nominal damages (and perhaps in a proper case punitive damages

in addition). The plaintiff, as to the fund represented by the original check and each subsequent instrument, is in no worse position than he was when George elected to stop payment at the very beginning. Since the plaintiff sought only special damages in the amount of the face value of the check plus interest to which he is not entitled, and punitive damages for bad faith which he failed to prove, the rule that a party is entitled to recover nominal damages for the invasion of a legal right although no actual damages are suffered (*Williams v. Harris*, 207 Ga. 576, 63 SE2d 386) does not apply. *Stewart v. Western U. Tel. Co.*, 83 Ga. App. 532 (64 SE2d 327); *Darlington Corp. v. Evans*, 88 Ga. App. 84 (76 SE2d 72).

The trial court did not err in granting the motion for judgment notwithstanding the verdict.

*Judgment affirmed on main bill of exceptions; cross bill dismissed. Felton, C. J., and Eberhardt, J., concur.*