48244. HARRIS et al. v. HILL.

ARGUED JUNE 1, 1973 — DECIDED JUNE 27, 1973 — REHEARING
DENIED JULY 18, 1973 —

*Warren Akin,* for appellants.

*Gettle & Fraser, Jerry L. Berthold,* for appellee.

STOLZ, Judge. ■ What was the effect of the bank's withdrawing $4,500 from each defendant's account and issuing cashier's checks in such amounts to the plaintiff? The answer to this question is found in certain basic definitions as applied to the facts in the case sub judice. In *Wright v. Trust Co. of Ga.,* 108 Ga. App. 783, 787 (134 SE2d 457), this court held as follows: "We make no distinction between a cashier's and a treasurer's check, and are convinced that those differences which exist between a certified check and a cashier's check are not material to this discussion. The same rights accrue as between the bank and the payee. Lummus Cotton Gin Co. v. Walker, 195 Ala. 552 (70 S 754). 'A certified check has a distinctive character as a species of commercial paper and constitutes a new contract between the holder and the certifying bank. The funds of the drawer are, in legal contemplation, withdrawn from his credit and appropriated to the payment of the check, and the bank becomes the debtor of the holder as for money had and received.' *McIntire v. Raskin,* 173 Ga. 746 (3c) (161 SE 363). The certification of a check by the bank at the instance of the payee amounts to a payment of the check as to all parties except the payee and the bank. *Thompson v. Thompson,* 203 Ga. 128 (2a) (45 SE2d 632); *Mitchell v. Asbury,* 94 Ga. App. 465 (95 SE2d 341). It is frequently likened to a bill of exchange accepted in advance. A cashier's check is the primary obligation of the bank. *Nissenbaum v. State,* 38 Ga. App. 253 (143 SE 776); *Bank of Statham v. National Bank of Athens,* 143 Ga. 293 (84 SE 966). 'A cashier's check is a bill of exchange drawn by a bank upon itself.' "

The character of the cashier's checks here requires the application of a different rule than that stated in *A. M. Kidder & Co. v. Clement A. Evans & Co.,* 117 Ga. App. 346 (160 SE2d 869) and *Rossville Fed. S. & L. Assn. v. Chase Manhattan Bank,* 223 Ga. 188 (154 SE2d 243), relied on by the plaintiff. In both cases, the checks were ordinary checks drawn on an account in which there were insufficient funds. It is axiomatic that such checks do not constitute payment until they are presented to the maker's bank and honored. *Rossville Fed. S. & L. Assn.,* supra, Hn. 3.

Certain basic definitions are critical to the resolution of this case. " 'Issue' means the first delivery of an instrument to a holder or a remitter." Code Ann. § 109A-3—102 (1) (a) (Ga. L. 1962, pp. 156,

237). " 'Instrument' means a negotiable instrument." Code Ann. § 109A-3—102 (1) (e). A check is a negotiable instrument. Code Ann. § 109A-3—104 (2) (b) (Ga. L. 1962, pp. 156, 239). A cashier's check is a negotiable instrument. 10 CJS 410, Bills and Notes, § 5, n. 60. " 'Holder' means a person who is in possession of a document of title or *an instrument* or an investment security drawn, issued or indorsed to him or to his order or to bearer or in blank." (Emphasis supplied.) Code Ann. § 109A-1—201 (20) (Ga. L. 1962, pp. 156, 161). "Remitter" means one who remits. Webster's New International Dictionary (2d Ed.), unabridged. " 'Remitting bank' means any payor or intermediary bank remitting for an item." Code Ann. § 109A-4—105 (f) (Ga. L. 1962, pp. 156, 286). " 'Item' means any instrument for the payment of money even though it is not negotiable but does not include money." Code Ann. § 109A-4—104 (1 g) (Ga. L. 1962, pp. 156, 284).

"A cashier's check is a check of the bank's cashier on his or another bank. It is in effect a bill of exchange drawn by a bank on itself, and *accepted in advance by the act of its issuance;* and in substance is an order or direction to the bank to pay the payee from its funds, a written promise of the issuing bank to pay on demand. It is not a receipt, but is a *negotiable instrument."* (Emphasis supplied.) 10 CJS 409, 410, Bills and Notes, § 5 a (1).

A check is (among other things) a chose in action. 10 CJS 409, Bills and Notes, § 5 a (1), n. 51. Thus a cashier's check is a chose in action. A chose in action is personalty. Code § 85-1801.

Ordinary choses in action are subject to tax liens. Worley v. United States, 340 F2d 500 (CA 9, 1965). The United States statutory lien for taxes can be asserted against intangible property, such as a debt. United States v. Eiland, 223 F2d 118 (CA 4, 1955). Under 26 USCA § 6321, providing that the United States shall have a lien on any property of a taxpayer who is liable to pay any tax and who neglects or refuses to pay after demand, "property" is used in a broad sense, designed to include all concepts of such term. Golden v. State, 1955, 285 P2d 49, 133 CA2d 640. *Summer v. Allison,* 127 Ga. App. 217 (1a) (193 SE2d 177).

*The matter now reduces itself to one of simple contract.* Under the stated facts, there can be no serious disagreement that there was a valid verbal contract between the plaintiff and each defendant. The plaintiff had performed his part of the contracts by the conveyance and delivery of 100 shares of First National stock to each defendant. Payment by each defendant was all that remained for complete performance. Each defendant instructed

the bank to withdraw the necessary funds from his account, issue a cashier's check to the plaintiff, and deliver the same to the plaintiff's attorneys. Once the funds were withdrawn from the defendants' respective accounts, the defendants had no control or dominion over them. Once the cashier's checks were issued, the funds represented thereon became the property of the plaintiff and as such was subject to levy by the United States. The bank was served with notice of the tax levy by the United States on June 6, 1972, and was absolutely bound to honor the tax lien on the plaintiff's property (the three cashier's checks) or become liable to the United States for the sums represented thereon. The lien of the federal government for income taxes attached to all property of the plaintiff in the possession of First National, and thereafter the property (cashier's checks) had, in a sense, two owners: the plaintiff and, to the extent of the lien, the United States. United States v. Cox, 119 FSupp. 147 (DC ND Ga., 1953). The situation here is much the same as if the United States had levied the tax lien on each of the defendants after the plaintiff conveyed the bank stock to the defendants, but prior to the defendants' payment therefor. Once the levy was made and the money to be used for payment of the stock was seized by the United States as a result of the levy, the plaintiff could not successfully contend that he had not been paid. Thus, once the moneys were withdrawn from the defendants' accounts and the cashier's checks were issued in the plaintiff's name, they became his property. The defendants could not recall the cashier's checks or stop payment on them. Insofar as the defendants were concerned, the issuance of the cashier's checks constituted payment of their debt to the plaintiff and completed performance of the contract. The plaintiff is receiving the benefit of the sale of his First National stock to the defendants through the application of the sale proceeds toward payment of his tax obligation to the United States.

The trial court erroneously granted the plaintiff's motion for summary judgment.

■ The defendants enumerate as error the failure of the trial court to join as parties the First National Bank of Cartersville and the United States of America. We need not pass on this enumeration, as the question is rendered moot by our holding in Division 1 of this opinion. However, it is noted in passing that 28 USCA § 2410 (a) (5) would seem to authorize such joinder as far as the United States is concerned. A like observation is made with regard to Code Ann. § 81A-119 (a) (Ga. L. 1966, pp. 609, 630; 1972,

pp. 689, 694), as applied to First National.

■ Contemporaneously with the filing of the notice of appeal, the defendants moved this court to remand this case to the trial court with direction to make the First National Bank of Cartersville and the United States of America parties and to consolidate these cases with other litigation then pending in the Superior Court of Bartow County, but which has subsequently been removed to the United States District Court, Northern District of Georgia, Rome Division.

In Division 1 of this opinion, we have attempted to clearly express ourselves regarding the rights of the parties in this case. In Division 2, we have noted the mootness of the joinder issue in this case as far as First National and the United States are concerned. The only provision regarding the consolidation of civil cases that presently exists in our state, is found in Code Ann. § 81A-142 (a) (Ga. L. 1966, pp. 609, 654). If, on the appearance of these cases in the trial court, the parties to all cases consent to the cases being consolidated, and the United States District Court consents to the consolidation and removal, such can be readily accomplished. It is patently beyond the power and jurisdiction of this court to do so. This is particularly true in this instance, since the other cases have been removed to the United States courts and, thus, are not pending in the courts of this state.

*Judgment reversed. Eberhardt, P. J., and Pannell, J., concur.*