**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 16, 2017**

# In the Court of Appeals of Georgia

A16A1890. BURROWES v. BANK OF AMERICA, N.A.

BRANCH, Judge.

After Bank of America, N.A. ("BOA" or "the Bank"), was served with a garnishment action naming Celio O. Burrowes as the defendant, the Bank stopped payment on a cashier's check which was purchased with funds from Burrowes's BOA checking account and which named Burrowes as the payee. Burrowes then filed suit against BOA in Fulton County Superior Court, asserting that the Bank had wrongfully refused to honor the check in violation of Georgia's Commercial Code. The trial court granted BOA's motion for summary judgment and denied Burrowes's cross-motion. Burrowes now appeals from that order, arguing that as a matter of law, the Bank was required to honor the cashier's check. For reasons explained more fully below, we find no error and affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). "On an appeal from a grant of summary judgment, we review the record de novo, construing the evidence and all reasonable inferences that can be drawn from it in the light most favorable to the party opposing the summary judgment motion." *Howerton v. Harbin Clinic*, 333 Ga. App. 191-192 (776 SE2d 288) (2015) (citation omitted).

Here, the relevant facts are undisputed and show that in February 2015, Burrowes maintained a checking account with BOA. On February 6, 2015, Sheffield Properties, LLC, filed a garnishment action in DeKalb County State Court naming Burrowes as the defendant and BOA as the garnishee. The garnishment sought $143,199.85, and the Bank was served with this action at its office in Decatur at 9:20 a.m. on February 11, 2015. At that time, Burrowes's checking account had a balance of $88,013.61. Shortly after 2:00 p.m. on February 11, Burrowes visited the Bank's Peachtree Battle branch and sought to withdraw approximately $77,100 from his checking account. The Peachtree Battle branch did not have that amount of cash available, so the branch manager recommended that Burrowes take $10,000 in cash and the remainder in the form of a cashier's check. Burrowes agreed, and at 2:35 p.m. the Bank issued Burrowes a cashier's check in the amount of $67,100, with the check

2

naming Burrowes as both the remitter[1] and the payee. When it issued the cashier's check, the Peachtree Battle branch was unaware of the garnishment action.

At 3:46 p.m. on that same afternoon (February 11, 2015), Jennifer Aldrich, the Lead Operations Representative in BOA's Legal Order Processing and Fulfillment Department, placed a garnishment freeze on Burrowes's checking account. At that time, Aldrich learned of the cashier's check that had been purchased less than two hours earlier with funds from Burrowes's account. Because the check had been purchased after the Bank had been served with the garnishment summons, Aldrich immediately placed a stop-payment order on the cashier's check, which became effective the following day. Aldrich also requested that a Bank employee from the Peachtree Battle branch contact Burrowes and ask him to return the check, and BOA's records reflect that the employee complied with this request.

Burrowes did not return the check. Instead, on February 17, 2015, Burrowes deposited the cashier's check in an account he had with New Bridge Bank in Greensboro, North Carolina. The following day, New Bridge informed Burrowes that

---

[1] "'Remitter' means a person who purchases an instrument from its issuer if the instrument is payable to an identified person other than the purchaser." OCGA § 11-3-103 (a) (11). Thus, when a customer purchases a cashier's check from a bank, "[t]he customer's name may appear on the check as remitter to identify who bought it." Black's Law Dictionary (10th ed. 2014).

BOA had refused to honor the check. Burrowes then filed the current lawsuit against BOA, asserting a claim under Georgia's Commercial Code. After filing suit against the Bank, Burrowes filed a traverse to the garnishment, and the Bank subsequently paid all monies held on behalf of Burrowes into the court in the garnishment action. The court in the garnishment action thereafter denied Burrowes's traverse and released the funds in question to the garnishment plaintiff (Sheffield).

In its answer to Burrowes's complaint, BOA asserted a number of affirmative defenses, including failure of consideration and mistake. The Bank eventually moved for summary judgment, arguing that under the circumstances, its refusal to honor the cashier's check was proper. Burrowes filed a cross-motion, arguing that the Bank was required to honor the check as a matter of law. Following a hearing on the parties' cross-motions for summary judgment, the trial court granted the Bank's motion, denied Burrowes's motion, and granted judgment in favor of BOA on Burrowes's claim. This appeal followed.

Burrowes's claim against the Bank is based on OCGA § 11-3-411, which provides in relevant part:

(b) If [an] obligated bank[2] wrongfully (i) refuses to pay a cashier's check or certified check . . . the person asserting the right to enforce the check is entitled to compensation for expenses and loss of interest resulting from the nonpayment and may recover consequential damages if the obligated bank refuses to pay after receiving notice of particular circumstances giving rise to the damages.

OCGA § 11-3-411 (b). BOA defended against Burrowes's suit by relying on subsection (c) of this same statute, which states:

(c) Expenses or consequential damages under subsection (b) of this Code section are not recoverable if the refusal of the obligated bank to pay occurs because . . . (ii) the obligated bank asserts a claim or defense of the bank that it has reasonable grounds to believe is available against the person entitled to enforce the instrument; . . . or (iv) payment is prohibited by law.

OCGA § 11-3-411 (c).

In its motion for summary judgment, BOA argued that its refusal to honor the cashier's check did not constitute a wrongful refusal to pay because the defenses of mistake and failure of consideration could be asserted against Burrowes as the payee.

---

[2] The statute defines "obligated bank" as "the acceptor of a certified check or the issuer of a cashier's check or teller's check bought from the issuer." OCGA § 11-3-411 (a).

5

See OCGA § 11-3-411 (c) (ii); *Wright v. Trust Co. of Ga.*, 108 Ga. App. 783, 788-789 (3) (134 SE2d 457) (1963) (where an instrument "is in the hands of the original payee, where no holder in due course is involved, where the payee has not suffered any detriment or changed his position because of reliance on the instrument, the bank may properly defend itself on the basis of mistake and want of consideration").[3] On appeal, Burrowes argues that the trial court erred in granting BOA's motion for summary judgment (and in denying his cross-motion) because at the time he purchased the cashier's check, the funds it represented were withdrawn from his account and therefore were not subject to garnishment.[4] Burrowes therefore reasons that the Bank could not defend its refusal to honor the check based on mistake or

---

[3] The Bank reasoned that the defense of mistake applied because at the time the Peachtree Battle branch issued the cashier's check, it was unaware of the garnishment and therefore mistakenly believed that the funds in Burrowes's checking account were available to purchase that check. Additionally, BOA asserted that because it was required to pay the funds in Burrowes's checking account into the court in the garnishment action, the cashier's check was issued without consideration.

[4] In his reply brief, Burrowes also argues that BOA breached a fiduciary duty it owed him as a customer when it failed to advise him that a cashier's check could be dishonored. Burrowes contends that had he been informed of that fact, he would have declined the suggestion of a cashier's check and would have insisted on receiving his entire withdrawal in cash. Burrowes, however, neither raised nor argued a breach of fiduciary duty claim in the trial court, and he cannot raise such a claim for the first time on appeal. See *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 828 (2) (573 SE2d 389) (2002).

failure of consideration. We disagree, and find that regardless of whether the affirmative defenses asserted by BOA apply in this case, Burrowes is not entitled to recover on his claim under OCGA § 11-3-411 (b) because payment of the cashier's check was prohibited by law. See OCGA § 11-3-411 (c) (iv).

At the time of trial,[5] Georgia's garnishment law provided, in relevant part, that

[a]ll property, money or other effects of the defendant in the possession or control of the garnishee at the time of service of the summons of garnishment upon the garnishee or coming into the possession or control of the garnishee at any time from the date of service of the summons of garnishment upon the garnishee to the date of the garnishee's answer[6] shall be subject to the process of garnishment[.]

OCGA § 18-4-20 (c) (2015). Under the plain language of the applicable garnishment statute, therefore, if the funds for the cashier's check belonged to Burrowes even after they were transferred from his account, and if those funds were within the control of BOA, then they were subject to garnishment.

---

[5] Trial took place in March, 2016. Georgia's garnishment statute, OCGA § 18-4-1, et seq., was amended effective May 12, 2016.

[6] The former garnishment statute required that a garnishee's answer "be filed . . . not sooner than 30 days and not later than 45 days after the service of the summons . . . ." OCGA § 18-4-62 (a) (2015).

"A cashier's check is a check drawn by a bank on itself." *Weldon v. Trust Co. Bank of Columbus*, 231 Ga. App. 458, 460 (1) (499 SE2d 393) (1998) (footnote omitted). See also OCGA § 11-3-104 (g) (defining "cashier's check" as "a draft with respect to which the drawer and drawee are the same bank or branches of the same bank"). Thus, the funds given in exchange for such a check go into an account belonging to the bank. *Weldon*, 231 Ga. App. at 460 (1). See also *Wright*, 108 Ga. App. at 787 (3). And the issuance of the cashier's check "operates as an assignment of funds to the payee" — i.e., those funds, although held by the bank, are viewed as the property of the payee. *Weldon*, 231 Ga. App. at 460 (1) (citation omitted). As Burrowes's own brief acknowledges, therefore, at the time Burrowes purchased the cashier's check, funds were debited from his account and transferred into an account belonging to BOA. The funds, however, were assigned to Burrowes and were viewed as Burrowes's legal property. Thus, because the funds represented by the cashier's check were the property of Burrowes (the debtor) and were within the control of BOA (the garnishee), the former OCGA § 18-4-20 (c) required that the Bank pay those funds into the court in the garnishment action. It follows, therefore, that BOA acted properly in refusing to honor the cashier's check at issue. Accordingly, the trial court

8

did not err in granting summary judgment to BOA on Burrowes's claim, and we therefore affirm that order.

*Judgment affirmed. Mercier, J., concurs. Ellington, P. J., concurs in judgment only.*