Max MUNSON et al., Plaintiffs-Appellees,

v.

AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Defendant-Appellant.

Max MUNSON et al., Plaintiffs-Appellants,

v.

AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Defendant-Appellee.

Nos. 72-1609, 72-1610.

United States Court of Appeals, Seventh Circuit.

Heard April 9, 1973.

Decided July 24, 1973.

As Amended on Denial of Rehearing Aug. 21, 1973.

Gale L. Marcus, Chicago, Ill., for Munson.

Richard S. Wisner, James D. Mowen, Dom J. Rizzi, Chicago, Ill., for American Nat'l Bank & Trust.

Before SWYGERT, Chief Judge, and KILEY and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

Pursuant to the terms of an escrow agreement, one Jack Walsh was to deposit $2,500,000 with the Chicago Title and Trust Co. (Chicago Title) as escrowee, whereupon Chicago Title was to disburse that amount by its own drafts to the various parties to the agreement. When on December 16, 1969, Walsh deposited what purported to be a $2,500,000 certified check drawn on a Florida bank payable to his order, Chicago Title issued, among 133 others, its draft in the amount of $80,000 to Gale L. Marcus as payee and as agent and attorney for plaintiffs Max Munson (Munson) and Munson Mortgage and Investment Corp. (Munson Mortgage Co.). The $80,000 draft was issued in payment of a pre-existing debt Walsh owed Munson, reduced from $130,000 by agreement. On December 17, 1969, Marcus endorsed the draft in blank and delivered it to Munson who, acting indi-

vidually and on behalf of Munson Mortgage Co., used it to purchase from defendant three cashier's checks and $1,000 in cash. Only two of these cashier's checks are pertinent here:[1] one was made out to the Continental Illinois National Bank for deposit to Country Life Insurance Co. in the amount of $38,299.27 and one to Munson Mortgage Co. for $32,595.96. Munson brought the former check to the Continental Illinois National Bank where he directed that it be deposited to the account of the Country Life Insurance Co. to cover a bad check previously issued to that company by Munson Mortgage Co. He deposited the $32,595.96 check in the account of Munson Mortgage Co., and numerous checks were issued against it.

On Friday, December 19, 1969, Chicago Title learned that the $2,500,000 check purportedly funding the escrow bore a fraudulent certification and was drawn against an account that had only $1.98 in it. It thereupon stopped payment on the escrow drafts it had issued and accordingly advised defendant that it had stopped payment on the $80,000 draft. On Sunday, December 21, 1969, Marcus was advised by telephone by Chicago Title that payment had been stopped on the $80,000 draft; on the next day defendant gave Marcus notice of the dishonor; and on December 23, Marcus learned of defendant's debiting his account for the $1,000 cash that had been given on December 17. Pursuant to an indemnity agreement entered into by Chicago Title and defendant, also on December 22 defendant stopped payment on its cashier's checks purchased by plaintiffs.

■ As purchasers of the cashier's checks, plaintiffs brought this action against defendant for wrongful stoppage of payment.[2] The individual and corporate plaintiffs respectively requested punitive damages in the sums of $3,000,000 and $2,000,000 in Count I of the complaint, alleging malice as "the gist of the action." In Count II of the complaint, added later, plaintiffs requested compensatory damages in the amount of $71,895.23—the sum of the two cashier's checks above mentioned and the $1,000 debit of Marcus' account—allegedly sustained as a result of defendant's dishonor of its cashier's checks and debit of plaintiffs' counsel's account. The district court entered judgment in favor of defendant on Count I. It granted plaintiffs' motion to strike the defenses to Count II, entered judgment on the pleadings in favor of plaintiffs on that count in the sum of $71,895.23, and denied defendant's motion for summary judgment. Defendant has appealed from the district court's adverse rulings on Count II and plaintiffs have cross-appealed from the adverse judgment on Count I.

I

■ As to Count I claiming punitive damages, it is settled by controlling

---

1. The third, for $8,104.77 payable to Richard H. Roberts, was paid by Chicago Title.

2. See Schulze v. Rayunec, 350 F.2d 666, 668 (7th Cir. 1965), certiorari denied, 382 U.S. 919, 86 S.Ct. 293, 15 L.Ed.2d 234, which acknowledges that a debtor-creditor relationship exists between the purchaser of cashier's checks and the issuing bank. Plaintiffs could not maintain the action on the $38,299.27 cashier's check itself payable to the Continental Illinois National Bank for deposit to Country Life Insurance Co. since they are neither payees nor holders thereof. Further, as purchasers it is unclear how plaintiffs could claim to have suffered damages in the amount of the check since it appears the check was taken in payment of the corporate plaintiff's debt, and Ill.Rev.Stat.1971, ch. 26, § 3–802(1)(a) provides that " * * * where an instrument is taken for an underlying obligation * * * the obligation is pro tanto discharged if a bank is the drawer * * *." Plaintiffs' suggestion that they are "in effect suing herein as the Agent of Country Life to the extent of its claim" (Reply Brief in Support of Plaintiffs' Motion to Strike Separate Defenses to Count II, pp. 14–15) is entirely unsubstantiated. With regard to the $32,595.93 cashier's check payable to Munson Mortgage Co., it is not alleged in the complaint that plaintiffs are presently in possession of or have title to the instrument.

Illinois law that generally such damages may be recovered only where the allegedly wrongful act is accompanied by wantonness, malice, oppression or circumstances of aggravation. Knierim v. Izzo, 22 Ill.2d 73, 87, 174 N.E.2d 157, 165 (1961). It was a question of law for the district judge to resolve whether the facts of this case brought it within the rule in which punitive damages may be assessed. Smith v. Hill, 12 Ill.2d 588, 594, 147 N.E.2d 321, 325 (1958). This record entitled him to conclude that there were no factors warranting the imposition of punitive damages. As he said, the bank exercised the due care of an ordinarily reasonable and prudent person under the circumstances. Therefore, Count I need not have been submitted to a jury, as demanded by plaintiffs. We hold that the judgment for the bank as to Count I was warranted.

## II

Defendant first argues, and this is the substance of its first separate defense, that plaintiffs cannot enforce defendant's obligation to honor its cashier's checks because "there is a total failure of consideration in this case." Its argument is as follows: In purchasing the cashier's checks, plaintiffs incurred an obligation to pay for them. Under Ill. Rev.Stat.1971, ch. 26, §§ 2–511(3) [3] and 3–802(1)(b),[4] the giving of the $80,000 draft was only a conditional discharge of that obligation, and that conditional discharge was defeated when the $80,000 draft was dishonored. Defendant then somehow equates the dishonor of the draft with a failure of consideration and argues that whether or not plaintiffs are holders in due course of the cashier's checks,[5] they are not immune to the defense of failure of consideration because they dealt with defendant. Ill.Rev.Stat. 1971, ch. 26, §§ 3–305(2),[6] 3–306(c).[7]

Defendant has mischaracterized the transaction and studiously avoided the controlling Uniform Commercial Code provision. Ill.Rev.Stat.1971, ch. 26, § 4–303 provides, in pertinent part:

"Any knowledge, notice or stop-order received by, legal process served upon or setoff exercised by a payor bank, whether or not effective under other rules of law to terminate, suspend or modify the bank's right or duty to pay an item or to charge its customer's account for the item, comes too late to so terminate, suspend or modify such right or duty if the knowledge, notice, stop-order or legal process is received or served and a reasonable time for the bank to act thereon expires or the setoff is exercised after the bank has done any of the following:

"(a) accepted or certified the item * * *."

By definition a cashier's check is a bill of exchange drawn by a bank

3. "Subject to the provisions of this Act on the effect of an instrument on an obligation (Section 3–802), payment by check is conditional and is defeated as between the parties by dishonor of the check on due presentment." The Illinois statutory references throughout are to the Uniform Commercial Code adopted in Illinois. The history of the Code is discerningly recapitulated in Henson, Secured Transactions Under the Uniform Commercial Code 1–5 (1973). Professor Henson's estimable hornbook, dealing with UCC Article 9, also contains useful precepts for interpreting the Code (at 6–15).

4. "Unless otherwise agreed where an instrument is taken for an underlying obligation * * * the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation * * *."

5. But see note 2, *supra*. Since plaintiffs must be bringing this action as purchasers for breach of contract rather than on the instruments, it is difficult to understand the relevance of plaintiffs' holder in due course status *vel non* with respect to the cashier's checks.

6. "To the extent that a holder is a holder in due course he takes the instrument free from * * * all defenses of any party with whom the holder has *not* dealt except * * *." (Emphasis supplied.)

7. "Unless he has the rights of a holder in due course any person takes the instrument subject to * * * the defenses of want or failure of consideration * * *."

upon itself and accepted in advance by the act of issuance. State of Pa. v. Curtiss Nat. Bank, 427 F.2d 395, 398 (5th Cir. 1970); Ross v. Peck Iron & Metal Co., 264 F.2d 262, 269 (4th Cir. 1959); Brady on Bank Checks, 10 (1969 ed.). After issuance defendant bank simply had no right to countermand the cashier's checks. State of Pa. v. Curtiss Nat. Bank, *supra*; National Newark & Essex Bank v. Giordano, 111 N.J.Super. 347, 268 A.2d 327, 329 (1970); Ross v. Peck Iron & Metal Co., *supra*. When Chicago Title stopped payment on the $80,000 draft, to be sure defendant had a right of recourse on that instrument or on the underlying obligation. As Ill. Rev.Stat.1971, ch. 26, § 3–802(1)(b) states, "If the instrument is dishonored action may be maintained on either the instrument or the obligation." But the rights of recourse are all defendant had. Dishonor of the $80,000 draft gave defendant no more right to countermand its cashier's checks than it would have given defendant a right to refuse to pay cash it had already paid. "The transaction is not executory but rather an executed transaction of purchase and sale." National Newark & Essex Bank v. Giordano, *supra*, 268 A.2d at 328. Hence we are at a loss to understand how the dishonor, which itself gave rise to defendant's rights to proceed against the drawer, transferor or obligor and extinguished no liability, can provide a defense of "failure of consideration."[8]

Defendant also asserted three separate defenses in the nature of an offset against any liability for wrongful dishonor of its cashier's checks and moved for summary judgment thereon. Its position here is well taken, and summary judgment should have been granted.

Besides asserting its right to recover from plaintiffs on their underlying obligation to pay for the cashier's checks, defendant claimed any liability to plaintiffs was also offset by their liability on the $80,000 instrument arising from the indorsement contract (Ill.Rev. Stat.1971, ch. 26, § 3–414(1)) and from their warranties of transfer (Ill.Rev. Stat.1971, ch. 26, §§ 4–207(2)(d) and 4–207(2), final sentence). It is necessary only to consider the viability of the indorsement and warranty liabilities of plaintiffs, for if plaintiffs have been discharged on the instrument, they are also discharged on the underlying obligation. Ill.Rev.Stat.1971, ch. 26, § 3–802(1)(b).

By virtue of Ill.Rev.Stat.1971, ch. 26, § 4–207(2)(d), plaintiffs as transferors warranted that "no defense of any party is good against [them]." If plaintiffs were not holders in due course of the $80,000 draft, it appears from related state court litigation that Chicago Title does have a defense against plaintiffs on the $80,000 draft. See Ill.Rev.Stat.1971, ch. 26, § 3–306(b). Plaintiffs have argued at length their holder in due course status, but suffice it to say we think there was at least substantial factual question as to whether the events leading up to and surrounding the escrow agreement put plaintiffs on notice that Walsh was in no financial position to write an indefensible check for $2,500,000 and even as to whether or not the plaintiffs acted in good faith. See Ill.Rev.Stat.1971, ch. 26, § 3–302(1).

Resolution of these factual questions will be unnecessary, however, because plaintiffs' liability on their indorsement and their coextensive warran-

8. The only case of pertinence under the Uniform Commercial Code relied on by defendant is Wilmington Trust Co. v. Delaware Auto Sales, 271 A.2d 41 (Sup.Ct. Del.1970). In that case the court held that where a bank mistakenly exchanged its cashier's check for a personal check drawn on it over a stop-payment order, the bank could assert a personal defense of failure of consideration against the payee of the cashier's check and stop payment thereon. Research reveals no case which has approved of the Delaware court's analysis and, on the contrary, it has been brought into serious question. See Brady on Bank Checks, 5 and n. 9, 73 n. 57, 150 and n. 6 (1973 Supp.). We think the Illinois courts would decline to follow it in this case.

ty of transfer is clear. By the indorsement on the $80,000 draft of their conceded agent Gale Marcus, plaintiffs engaged that upon dishonor and any necessary notice of dishonor and protest they would pay the instrument according to its tenor at the time of their indorsement to defendant (Ill.Rev.Stat.1971, ch. 26, § 3–414(1)), and by their transfer of the draft to defendant they independently warranted the same thing. Ill. Rev.Stat.1971, ch. 26, § 4–207(2). After Chicago Title dishonored the $80,000 draft by stopping payment on it, defendant gave Marcus timely notice of dishonor, thus preserving its right to charge plaintiffs. See Ill.Rev.Stat.1971, ch. 26, §§ 3–501, 3–502, 3–507, 3–508(1), (3) and (8), 3–511(2)(b).

■ Plaintiffs' counter to their asserted liability under Ill.Rev.Stat.1971, ch. 26, §§ 3–414(1) and 4–207(2), as well as on the underlying obligation, is that defendant has either waived its rights or is estopped from claiming them. The argument is that defendant by its custom and practice would cash checks or issue cashier's checks in exchange for ordinary drafts for clients of its attorney-customers without regard to the amount in the attorney's account and in sole reliance on the drawer of the draft. Plaintiffs contend that an agreement arose from this course of dealing whereby defendant waived its rights against the indorser or transferor on the instrument or the underlying obligation. However, in no way can the service defendant extended to its attorney-customers be turned into a waiver of its rights of recourse under the law of negotiable instruments. The fact that defendant chose not to take certain precautions before cashing drafts or issuing its cashier's checks in exchange therefor does not mean it waived its rights to charge secondary parties in the event those drafts were later dishonored. Considering the pleadings and all the deposition testimony, we find no genuine factual issue as to the existence of any course of dealing whereby defendant surrendered its rights of recourse against plaintiffs. See Vermilion County Production Credit

Ass'n v. Izzard, 111 Ill.App.2d 190, 196–197, 249 N.E.2d 352 (1969). As a matter of law, plaintiffs were not discharged of their obligations on the $80,000 instrument and the underlying obligations thereof. Ill.Rev.Stat.1971, ch. 26, § 3–601(2); see Cheltenham Stone and Gravel Co. v. Gates Iron Works, 124 Ill. 623, 626–628, 16 N.E. 923 (1888); Lechleiter v. Lechleiter, 330 Ill.App. 517, 523–524, 71 N.E.2d 845 (1947).

Consequently, it was error to strike defendant's second, third and fourth offset defenses to Count II, and in accordance with the foregoing discussion, defendant was entitled to summary judgment in its favor on Count II.

Therefore the judgment of the district court is affirmed on Count I and reversed on Count II with directions to enter judgment for the defendant.