BANK OF NILES, Plaintiff-Appellant, *v.* AMERICAN STATE BANK, *et al.,* Defendants-Appellees.

(No. 58274;

First District (1st Division)—September 24, 1973.

Albert A. Arnstein, of Chicago, for appellant.

James W. Cotter, of Chicago, and William Pappas, of Mason City, Iowa, for appellees.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The plaintiff Bank of Niles, payee of an instrument entitled "Bank Money Order" issued by the defendant American State Bank, sued the issuing bank and the Central National Bank in Chicago on that instrument. After a bench trial, the court entered judgment for the defendants and the plaintiff appeals.

The instrument so described had been issued in consideration of another check which later proved to have been forged, and the real issue here is whether the plaintiff bank is a holder in due course so as to cut

off. the defense of failure of consideration. We hold that it is and reverse insofar as the issuing bank is concerned.

In January of 1971, Phyllis Kantaris and Robert Hanson defrauded the plaintiff bank through a worthless check for $2,984 and were prosecuted in the municipal division of the circuit court. Hanson repaid $984 and an agreement was reached whereby, if Phyllis Kantaris repaid the $2,000 balance, the charge against her would be reduced from a felony to a misdemeanor. She would plead guilty to that charge and be put on two years probation. The case was continued from time to time to effectuate this.

On June 14, 1971, she went to the defendant American State Bank, in Mason City, Iowa, which issued and delivered to her a so-called "Bank Money Order" by which that bank undertook to pay, out of its own funds, "to the order of Robert R. Chodil, Vice-President and Cashier, Bank of Niles, Illinois," the sum of $2,000. She paid for this with a check in the same amount, purportedly signed by her then employer Mrs. F. W. Osmundson and drawn on the First National Bank, Mason City, Iowa. The money order was then mailed to Mr. Chodil at the plaintiff bank on June 15, 1971, enclosed in a letter from Phyllis Kantaris stating that "This is my $2,000 towards my restitution. My aunt lent me the money. So now, please don't hang me. Thanks, Phyllis Kantaris." On June 16, 1971, the money order was deposited by the plaintiff in its account at the Central National Bank in Chicago. Thereafter the charge against her was reduced from a felony to a misdemeanor, to which she pleaded guilty and she was put on two years probation.

When the $2,000 check was presented to the First National Bank, Mason City, Iowa, on which it was drawn, that bank ascertained that the purported signature of its customer Mrs. F. W. Osmundson was a forgery. It therefore refused to honor it on that ground and so advised the defendant American State Bank. When the money order was presented to the defendant American State Bank, it in turn refused to honor it and returned it stamped "Payment Stopped." After some correspondence and another presentation and another refusal, the plaintiff Bank of Niles filed the present suit against the American State Bank as maker and against its own correspondent bank the Central National Bank in Chicago on the said instrument. The complaint fails to set out any ground whatsoever for liability on the part of the plaintiff's correspondent bank and, other than affirming the judgment in its favor, we shall hereafter ignore it.

The defense was, in substance, that the agreement above recited constituted an agreement not to prosecute criminal charges and was therefore illegal; that, as a result, the plaintiff bank gave no consideration or

value for the money order and is not a holder in due course; and that the plaintiff is therefore subject to the issuing bank's defense of failure of consideration flowing from the fact that the check for which it was issued was forged and not paid.

The trial court, after a bench trial developing the facts above recited, entered judgment for both defendants, probably on the theory above urged by the defendants.

■■ The plaintiff's first contention is that the so-called "Bank Money Order" is an "unconditional" promise by the issuing bank to pay, apparently without regard to how the holder acquired the instrument or whether the plaintiff is a holder in due course. In support of this rather startling position its counsel quotes from section 3 of the "Sale of Exchange Act" (Ill. Rev. Stat. 1969, ch. 16½, par. 301—324), which contains the following in its various definitions:

> " 'Money Order' means a bill of exchange issued at the request and for the use or benefit of a person other than the issuer and representing an unconditional order or obligation in writing of the issuer to pay a sum certain in money on demand to order or to bearer. It does not mean instruments requiring counter signature for validation after issuance."

Not only is this definition contained in an Act not relating either to the negotiability of commercial paper or to banks, but section 5 of said act (ch. 16½, par. 305) expressly provides that:

> "Nothing in this Act shall apply to the sale or issuance of exchange by:
>
> \* \* \*
>
> "(b) Corporations organized under the general banking laws of this State or of the United States."

Furthermore, the Uniform Commercial Code itself uses the word "unconditional" when it says, in section 3—104(1) (Ill. Rev. Stat. 1969, ch. 26, par. 3—104(1)) that:

> "(1) Any writing to be a negotiable instrument within this Article must
>
> \* \* \*
>
> (b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article;"

but nevertheless, in section 3—305 (par. 3—305), it provides:

> "3—305. § 3—305. Rights of Holder in Due Course. To the extent that a holder is a holder in due course he takes the instrument free from

(1) all claims to it on the part of any person; and

(2) all defenses of any party to the instrument with whom the holder has not dealt except

(a) infancy, to the extent that it is a defense to a simple con-contract; and

(b) such other incapacity, or duress, or illegality of the transaction as renders the obligation of the party a nullity; and

(c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and

(d) discharge in insolvency proceedings; and

(e) any other discharge of which the holder has notice when he takes the instrument."

We therefore hold that the plaintiff's said contention is without merit.

Although the instrument sued upon is entitled "Bank Money Order," it is, in substance, a cashier's check, by which the maker bank promises to pay, out of its own funds, a certain sum of money to the order of a certain person or entity.

As was said, in *Ross v. Peck Iron & Metal Co., Inc.* (4th Cir. 1959), 264 F.2d 262, at page 269:

"* * * [A] cashier's check is a bill of exchange drawn by a bank upon itself, accepted in advance by the act of issuance, and is a non-countermandable promise by the bank to pay, a primary obligation of the bank. 1938, 10 C.J.S., Bills and Notes, § 5, 7 Am.Jur., Banks, § 525 (1937); annotation 107 A.L.R. 1463, 1464 (1937). Thus, the bank assumes the dual position of drawer and drawee. Once the cashier's check is negotiated to a holder in due course, the credit and resources of the payee are no longer primarily involved: and upon presentment for payment, the bank must honor the check. For a comprehensive analysis of a cashier's check and the distinction between it and an ordinary check, see First National Bank of Portland v. Noble, 1946, 179 Or. 26, 168 P.2d 354, 169 A.L.R. 1426."

■■ Another excellent statement is found in *Wright v. Trust Company of Georgia* (1963), 108 Ga.App. 783, 134 S.E.2d 457, where the court, quoting from 1 Paton's Digest § 24, at 1168 (1940), said, at page 461:

' "A cashier's check is a bill of exchange drawn by a bank upon itself. The bank by issuing the check incurs the same primary liability on the instrument as a bank certifying an ordinary check. When payment has been stopped on a draft given to the bank in exchange for its cashier's check, the bank has received no con-

sideration for its own check and is liable on it only to a holder in due course." '

Such an instrument obviously comes within the scope of the Uniform Commercial Code.

The Uniform Commercial Code, in section 3—302 (Ill. Rev. Stat. 1969, ch. 26, par. 3—302), in pertinent part, provides that:

"(1) a holder in due course is a holder who takes the instrument

(a) for value; and

(b) in good faith; and

(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

Subsections (b) and (c) are obviously met here so that we must next decide whether the plaintiff took the instrument "for value."

Section 3—303 of said Code (Ill. Rev. Stat. 1969, ch. 26, par. 3—303), in pertinent part, provides that a holder takes an instrument for value:

"(b) when he takes the instrument in payment of or as security for an antecedent claim against any person whether or not the claim is due".

Phyllis Kantaris (with Robert Hanson) had previously defrauded the plaintiff bank through a worthless check of $2,984, on which a balance of $2,000 still remained, the instrument was taken by the plaintiff by way of restitution, *viz:*

"in payment of * * * an antecedent claim * * *"; · and the plaintiff gave value and is, so far, a "holder in due course," free of such a defense as failure of consideration.

This leaves only the defendant's contention that the agreement above described constituted an agreement not to prosecute criminal charges against Phyllis Kantaris in exchange for her payment of the $2,000 and that this renders the instrument void.

■■■ In support of this position, defendant's counsel cites and quotes from *Williamsen v. Jernberg* (1968), 99 Ill.App.2d 371, 240 N.E.2d 758, where this court, at page 375, in holding void a note signed by the accused's brother, said:

"The universal rule, followed in Illinois, is that 'compounding a crime being itself criminal, an agreement not to prosecute is void, not only because it is against the policy of the law, but also because the agreement is itself a crime * * *.' 17 CJS, Contracts, § 228, p 1067. Therefore, where the consideration for the execution of a note is a promise by the payee not to prosecute a party for an alleged crime, the consideration for the note is illegal

and the instrument is void. Dionne v. Matzenbaugh, 49 Ill.App. 527. Where any part of the consideration for a contractual obligation executed to compromise civil injuries resulting from a criminal act is a promise that the prosecution for the criminal act shall be suppressed, the contract is unenforceable. Henderson v. Victor, 268 Ill.App. 514; Good Hope State Bank v. Kline, 303 Ill.App. 381, 25 N.E.2d 425."

Counsel also cites *Henderson v. Victor* (1932), 268 Ill.App. 514, 22 Am.Rep. 117, and *Good Hope State Bank v. Kline* (1940), 303 Ill.App. 381, 25 N.E.2d 425, to the same effect.

The flaw in this contention as applied to the facts of this case, is that those cases involved agreements

"not to prosecute a party for an alleged crime,"

or

"that the prosecution for the criminal act shall be suppressed."

In the case at bar no such an agreement was made and no such actions were taken. On the contrary, Phyllis Kantaris was prosecuted and pleaded and was found guilty. The reduction of the charge from a felony to a misdemeanor was made by the State's Attorney, not by the plaintiff, and the granting of probation, which is in law a sentence, was made by the court, not by the plaintiff, although it did not object to either of these steps.

An Illinois case on all fours with the case now before us is *Austin v. Feron* (1937), 289 Ill.App. 528, 7 N.E.2d 476. There Michael Feron, a former police magistrate, with his wife Josephine signed a note under an agreement by which the charges were to be and were reduced to petit larceny and the defendant pleaded guilty and was put on probation.

The note was not paid and Austin, as treasurer of the village, filed suit on the note. The defense, as here, was that the note was void because it was given in consideration for an agreement not to prosecute.

In affirming a judgment for the plaintiff on a directed verdict, this court, at pages 533, 534, 535-536, said:

"Feron was admittedly short in his accounts, and owed the village $15,408. He was evidently desirous of making restitution by paying part of the shortage in cash and giving the village a note, with responsible comakers, for the balance. When the matter came up for trial the parties met in the court's chambers and discussed the terms upon which restitution should be made. By common agreement, and with the consent of the State's attorney and court, the felony was waived and the state proved its charges of a misdemeanor, by an agreed statement of facts in lieu of

evidence. Defendants argue that the proposal for restitution was initiated by Robert E. Cantwell, Jr., village attorney, and that the village agreed to waive the felony and interpose no objection to probation, upon condition that Feron would pay $5,000 in cash and procure the note with responsible comakers for the balance. It is urged that this constituted the compounding of a felony or misdemeanor as a consideration for the note, and cases are cited to support the contention that such a consideration is illegal and the note void. Sec. 43, ¶ 112, ch. 38, Illinois State Bar Stats. 1935; Jones Ill. Stats. Ann. 37.098, is relied upon as the basis for this contention. The section reads as follows:

'Whoever takes money, goods, chattels, lands or other reward, or promise thereof, to compound any criminal offense, shall be fined in double the sum or value of the thing agreed for or taken; but no person shall be debarred from taking his goods or property from the thief or felon, or receiving compensation for the private injury occasioned by the commission of any such criminal offense.'

■■ The statute thus provides that a reward may not be taken to compound a felony, but there is nothing in the statute to preclude the person whose goods or property have been taken, from receiving compensation for the 'private injury occasioned by the commission of any such criminal offense.' * * *

Plaintiff concedes that a reward cannot legally be taken from a criminal under sec. 43 of the Criminal Code, hereinbefore cited, and if so taken it can be recovered, or if a promise is given instead of payment, the promise is void. The victim of the embezzlement or theft may not suppress the evidence, stifle or stay the prosecution. He may, however, receive what is due him, and if he divulges all the facts pertaining to the crime to the officers of the law, stands ready to testify even though he may be willing that the guilty party should go unpunished, and does not conceal evidence or suppress or stifle the prosecution by any direct means or deceive the court and the law-enforcing officers, he cannot be held to have compounded a felony within the decisions of this and other States.

* * *

In the instant proceeding there was certainly no intention on the part of the trustees not to prosecute, for they did in fact prosecute the misdemeanor charge and defendant was convicted. It is true they showed a willingness to have the felony charges waived, if agreeable to the court and State's attorney, but this did not

amount to the compounding of a felony nor the suppression of evidence or the stifling of prosecution."

We doubt that we could improve on the above statement and feel that it controls the decision here. To the same general effect, see *Rudolph Stecher Brewing Co. v. Carr* (1915), 194 Ill.App. 32; *Oconto National Bank v. Weber* (1926), 240 Ill.App. 222; *Farmers National Bank v. Rosenkrans* (1926), 240 Ill.App. 230; *and Hertel v. Rebhan* (1932), 264 Ill.App. 548.

■■ We therefore hold that the plaintiff did not accept the $2,000 money order in consideration of an illegal agreement not to prosecute criminal charges, and took it in payment of an antecedent claim. As a result, the instrument is not void and the plaintiff bank is a holder in due course, free of the defense of failure of consideration.

We affirm the judgment of the circuit court insofar as it entered judgment for the defendant Central National Bank in Chicago and reverse the balance of the judgment and remand the case with directions to enter judgment in favor of the plaintiff and against the defendant American State Bank for $2,000, plus interest to the date of such judgment.

Affirmed in part, reversed in part, and remanded with directions.

GOLDBERG and EGAN, JJ., concur.