ABLE & ASSOCIATES, INC., Plaintiff-Appellee, *v.* ORCHARD HILL FARMS OF ILLINOIS, INC., Defendant.—(UNION NATIONAL BANK OF CHICAGO, Defendant-Appellant.)

First District (5th Division)   No. 79-269

Opinion filed October 5, 1979.

Thomas G. Vent and Edward J. Karlin, both of Chicago (Seyfarth, Shaw, Fairweather & Geraldson, of counsel), for appellant.

Edward V. Theis, of Palos Hills, for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Defendant Union National Bank of Chicago (Union) appeals from a judgment entered against it in an action to collect on a cashier's check issued by Union upon which it had later stopped payment. The issue presented is whether Union was legally justified in refusing to honor its cashier's check.

The essential facts in this case are not in dispute. It appears that plaintiff, an engineering firm, entered into a contract to perform certain engineering and construction services for Orchard Hill Farms of Illinois (Orchard). Upon the purported completion of its work, plaintiff sent Orchard a bill for approximately $12,000 and, in partial payment thereof, Orchard sent plaintiff its check drawn on Union in the amount of $7,108.48. When the check failed to clear, apparently due to insufficient funds in Orchard's account, Earl Bennecke (president of plaintiff) telephoned the president of Orchard (Robert Flude) who told Bennecke to send the check through again. It appears, however, that sometime after this conversation, a dispute arose between plaintiff and Orchard concerning whether the contract had been properly performed. As a result, Flude telephoned Union on Saturday, March 6, 1976, and, speaking to Mr. Rew (Union's president) requested that payment be stopped on Orchard's check. Flude then personally signed a stop order authorization

on Monday, March 8, at Union. On that same day, Bennecke came to Union and inquired of Judy Boyer (a bank officer) whether there were funds in Orchard's account sufficient to cover its check. She examined the account and determined that there were sufficient funds, but she did not check for any stop payment orders. Bennecke then asked for a cashier's check in exchange for Orchard's check and, since Boyer was unaware of the stop order, she issued a cashier's check payable to plaintiff. Later, when Union realized it had issued the cashier's check in exchange for Orchard's check (upon which payment had been stopped), it responded by stopping payment on its check.

Plaintiff filed a complaint against Orchard (which is not involved in this appeal) and Union. This appeal is by Union, from a judgment against it for $7,108.48—the amount of the dishonored cashier's check.

Opinion

Union essentially contends that, under certain circumstances, the law allows a bank to stop payment on its cashier's check and that such circumstances were present in the instant case. In support, it is first argued that since Orchard had ordered payment stopped on the check which plaintiff exchanged for Union's cashier's check, plaintiff did not give value for such cashier's check; that under section 3—302 of the Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, par. 3—302) (hereinafter cited as the Code), plaintiff is therefore not a holder in due course of the cashier's check; that because plaintiff is not a holder in due course, Union may refuse payment on the grounds of failure of consideration under section 3—306; that there was in fact a failure of consideration inasmuch as payment was stopped on Orchard's check which was given in exchange for the cashier's check; and that, therefore, Union was justified in stopping payment on the cashier's check.

In support of this argument, plaintiff cites *Bank of Niles v. American State Bank* (1973), 14 Ill. App. 3d 729, 303 N.E.2d 186. There, after an individual named Kantaris had been charged with defrauding the Bank of Niles by means of a worthless check, an agreement was worked out whereby the charges against Kantaris were to be reduced from a felony to a misdemeanor if she repaid $2,000. Kantaris, using a check ostensibly drawn by her employer on another bank, purchased a cashier's check from the American State Bank made payable to the vice president of the Bank of Niles. When American State later ascertained that this check had been forged, it refused to honor its cashier's check when it was presented for payment by the Bank of Niles, which then brought an action on the check against American State. In its defense, American State contended that the only purported consideration given by the Bank of Niles for the cashier's check was a promise not to prosecute the felony charge against

Kantaris; that this constituted an illegal agreement; that, as a result, the Bank of Niles gave no value for the cashier's check and, not being a holder in due course, it was subject to American State's defense that it was justified in refusing to honor its cashier's check because the check given in exchange for it was forged.

In determining the merits of American State's defense, the court stated:

> "As was said, in *Ross v. Peck Iron & Metal Co., Inc.* (4th Cir. 1959), 264 F.2d 262, at page 269:
>
> '* * * [A] cashier's check is a bill of exchange drawn by a bank upon itself, accepted in advance by the act of issuance, and is a non-countermandable promise by the bank to pay, a primary obligation of the bank. [Citations.] Thus, the bank *assumes the dual position of drawer and drawee.* * * *'
>
> Another excellent statement is found in *Wright v. Trust Company of Georgia* (1963), 108 Ga. App. 783, 134 S.E.2d 457, where the court * * * said, at page 461:
>
> ' "A cashier's check is a bill of exchange drawn by a bank upon itself. The bank by issuing the check incurs the same primary liability on the instrument as a bank certifying an ordinary check. When payment has been stopped on a draft given to the bank in exchange for its cashier's check, the bank has received no consideration for its own check and is liable on it only to a holder in due course." ' "

(14 Ill. App. 3d 729, 733-34, 303 N.E.2d 186, 188-89.)

The court then went on to hold that the Bank of Niles took the cashier's check in payment of an antecedent claim against Kantaris and that it therefore gave value for the instrument and was a holder in due course thereof (section 3—303(b)), not subject to American State's assertion of failure of consideration.

In the instant case, Union points to the language quoted above and initially argues that the court in *Bank of Niles* recognized that a bank which issues a cashier's check in exchange for a personal check upon which payment had been stopped may properly stop payment on the cashier's check as against a party not a holder in due course. Since plaintiff herein gave a personal check upon which payment had been stopped, it is contended by Union that, because plaintiff did not give value for the cashier's check, it was not a holder in due course thereof and, under *Bank of Niles*, it properly stopped payment on the grounds of failure of consideration.

Union also takes the position that even if plaintiff is considered to be a holder in due course of the cashier's check, its defense of failure of

consideration is viable and justifies the stop payment. It refers to section 3—305 of the Code, which states in pertinent part:

> "To the extent that a holder is a holder in due course he takes the instrument free from
>
> &ast; &ast; &ast;
>
> (2) all defenses of any party to the instrument with whom the holder has not dealt &ast; &ast; &ast;."

(Ill. Rev. Stat. 1977, ch. 26, par. 3—305.)

Union then argues that since it dealt directly with plaintiff, it is entitled to raise all defenses against it, including the defense of failure of consideration, regardless of whether plaintiff is a holder in due course of the cashier's check. In support of this argument, Union cites *Wilmington Trust Co. v. Delaware Auto Sales* (Del. 1970), 271 A.2d 41, where such reasoning was used. In that case, an individual named Hoopes purchased a car from plaintiff Delaware Auto Sales, paying for it with his personal check drawn on the defendant bank, Wilmington Trust Company. The next morning, Hoopes, dissatisfied with the car, called defendant and ordered payment stopped on the check. Less than an hour later, the owner of plaintiff arrived at the defendant bank with Hoopes's personal check and requested and received a cashier's check for it from the assistant treasurer, who was not aware of the stop payment order. Later, after the stop payment was discovered, defendant refused to honor its cashier's check, and plaintiff sued on the instrument. It was defendant's contention that its dishonor was proper because the stop payment order resulted in a failure of consideration. To the contrary, plaintiff argued that because it was a holder in due course of the cashier's check, defendant was precluded from asserting this personal defense. The court, relying on the portion of section 3—305 of the Code quoted above, held for defendant and, in so doing, stated:

> "[Under 3—305], personal defenses are available between immediate parties. Delaware Auto Sales dealt directly with Wilmington Trust Company; even if the auto dealer was a holder in due course, it is not immune to the defense of want or failure of consideration &ast; &ast; &ast;.
>
> We find that there was a failure of consideration here. Since the bank received the stop-payment order before it issued the [cashier's check], it had no right to charge the account of Hoopes, its depositor. A complete failure of consideration for the [cashier's check] resulted and the bank had the right to refuse to honor it when presented by the payee." 271 A.2d 41, 42.

We realize that *Bank of Niles v. American State Bank* and *Wilmington Trust Co. v. Delaware Auto Sales* lend support to Union's position that it was justified in refusing to honor its cashier's check. These

cases would allow a bank to stop payment consistent with those provisions of the Uniform Commercial Code relating to holders in due course, and we note that cases in other jurisdictions appear to follow similar reasoning. See, *e.g., TPO Inc. v. Federal Deposit Insurance Corp.* (3d Cir. 1973), 487 F.2d 131; *Banco Ganaderoy Agricola, S.A. v. Society National Bank* (N.D. Ohio 1976), 418 F. Supp. 520; *Tropicana Pools, Inc. v. First National Bank* (Fla. App. 1968), 206 So. 2d 48; *Wright v. Trust Co.* (1963), 108 Ga. App. 78, 134 S.E.2d 457; *State Bank v. American National Bank* (Minn. 1978), 266 N.W.2d 496; *Dakota Transfer & Storage Co. v. Merchants National Bank & Trust Co.* (S. Dak. 1957), 86 N.W.2d 639.

It appears, however, that a number of cases have interpreted the Uniform Commercial Code differently and adhere to a contrary rule that cashier's checks are not, under any circumstances, subject to countermand by the issuing bank. (See, *e.g., Swiss Credit Bank v. Virginia National Bank—Fairfax* (4th Cir. 1976), 538 F.2d 587; *State v. Curtiss National Bank* (5th Cir. 1970), 427 F.2d 395; *Kaufman v. Chase Manhattan Bank,* (S.D.N.Y. 1973), 370 F. Supp. 276; *Meador v. Ranchmart State Bank* (1973), 213 Kan. 372, 517 P.2d 123; *State ex rel. Chan Siew Lai v. Powell* (Mo. 1976), 536 S.W.2d 14; *National Newark & Essex Bank v. Giordano* (1970), 111 N.J. Super. 347, 268 A.2d 327.) The reasoning behind this interpretation was most clearly stated in *Wertz v. Richardson Heights Bank & Trust* (Tex. 1973), 495 S.W.2d 572. In that case, an individual named Baker delivered a personal check drawn on the defendant Richardson Heights Bank to the named payee, American National Insurance Company, in payment of a debt. Baker, however, stopped payment on the check, after which an agent of American National inquired of and was told by the defendant bank that the check was good. The agent then brought the check to defendant and exchanged it for a cashier's check payable to American National. After issuing the cashier's check, defendant discovered the error and placed a stop payment order on it. In an action to recover on the instrument, the court held that the bank could not stop payment on its cashier's check once it had been issued, explaining:

> "A cashier's check is defined as a bill of exchange drawn by a bank upon itself and accepted in advance by the act of its issuance and not subject to countermand by either its purchaser or the issuing bank. [Citations.] As such, the bank's liability on the check is governed by the Uniform Commercial Code * * *. Under the code the bank's issuance of the check, which by definition is also acceptance, constituted an agreement by the bank to honor the check as presented. [Section 3—410.] The rule may thus be stated that a cashier's check is accepted for payment when issued. [Citations.]
>
> Under the provision of [section 4—303], a stop order, whether or

not effective under other rules of law to terminate or suspend the bank's right or duty to pay an item, comes too late to terminate or suspend such right or duty if it is received after the bank has accepted or certified the item. Since a cashier's check is accepted when issued, Sec. 4—303, *supra,* has the effect of preventing a bank to stay payment on a cashier's check once it has been issued." 495 S.W.2d 572, 574.

In *Munson v. American National Bank & Trust Co.* (7th Cir. 1973), 484 F.2d 620, the court followed identical reasoning and also indicted what means of recourse might be available to a bank which had improperly issued a cashier's check. There, an escrow agreement was executed providing that an individual named Jack Walsh was to deposit $2,500,000 with the escrowee, Chicago Title and Trust Company, whereupon Chicago Title was to deliver certain sums by its own checks to certain parties, including $80,000 to Gale Marcus as payee and agent for Max Munson. The escrow agreement was performed, and Marcus endorsed the Chicago Title check to Munson, who in turn used the check to purchase from the defendant American National Bank three cashier's checks payable to various parties. Later, Chicago Title ascertained that the $2,500,000 check from Walsh was drawn on an account with insufficient funds and, accordingly, stopped payment on the $80,000 check. Defendant in turn stopped payment on the cashier's checks, and Munson brought suit. The court of appeals, following the analysis of *Wertz,* held that the bank had no right to stop payment on the cashier's checks. Significantly, the court also confirmed that plaintiff was nonetheless liable to the bank on an offset claim for $80,000 based on the underlying contract obligations for the purchase of the cashier's checks.

■■■ It is clear that in Illinois, a cashier's check is regarded as accepted by the act of issuance. (*Gillespie v. Riley Management Corp.* (1974), 59 Ill. 2d 211, 216, 319 N.E.2d 753, 756; *Madison & Kedzie State Bank v. Madison Square State Bank* (1933), 271 Ill. App. 12, 18.) Further, under section 4—303 of the Uniform Commercial Code, a stop order is ineffective "after the bank has * * * accepted or certified the item." (Ill. Rev. Stat. 1977, ch. 26, par. 4—303.) Thus, we feel that cases such as *Wertz v. Richardson Heights Bank & Trust* and *Munson v. American National Bank & Trust Co.* contain a more appropriate expression of the law. In this regard, we note that the contrary "holder in due course" analysis exhibited in *Bank of Niles v. American State Bank* had apparently never been employed in Illinois previously. See *Foreman v. Martin* (1972), 6 Ill. App. 3d 599, 602, 286 N.E.2d 80, 82, where it was noted that "[t]here are no cases to the effect that a cashier's check can be countermanded."

■■ Furthermore, we believe that policy considerations require a rule

which prohibits a bank from refusing to honor its cashier's checks. As eloquently stated in *National Newark & Essex Bank v. Giordano* (1970), 111 N.J. Super. 347, 268 A.2d 327:

> "A cashier's check circulates in the commercial world as the equivalent of cash. [Citation.] People accept a cashier's check as a substitute for cash because the bank stands behind it, rather than an individual. In effect, the bank becomes a guarantor of the value of the check and pledges its resources to the payment of the amount represented upon presentation. To allow the bank to stop payment on such an instrument would be inconsistent with the representation it makes in issuing the check. Such a rule would undermine the public confidence in the bank and its checks and thereby deprive the cashier's check of the essential incident which makes it useful. People would no longer be willing to accept it as a substitute for cash if they could not be sure that there would be no difficulty in converting it into cash." (111 N.J. Super. 347, 351-52, 268 A.2d 327, 329.)

Also see *Kaufman v. Chase Manhattan Bank* (S.D.N.Y. 1973), 370 F. Supp. 276, 279; *State ex rel. Chan Siew Lai v. Powell* (Mo. 1976), 536 S.W.2d 14, 16.

Finally, we note that *Gillespie v. Riley Management Corp.* (1974), 59 Ill. 2d 211, 319 N.E.2d 753, does not conflict with our holding. That case was cited by Union in its brief, with particular emphasis on the following quotation from the court's opinion:

> "When the purchaser of the cashier's check has paid to the bank the consideration specified by it for the execution of this negotiable instrument, and the bank has prepared and issued to the purchaser the instrument for delivery to the payee, the contract between the bank and purchaser becomes executed." (59 Ill. 2d 211, 216, 319 N.E.2d 753, 756.)

Union argues that, in this passage, the supreme court recognized that a bank may stop payment on a cashier's check in the event of a failure of consideration. We do not believe, however, that *Gillespie* stands for that proposition, as it appears to us that it dealt with a bank's liability for conversion when it issued a cashier's check payable to an individual in exchange for another cashier's check which was payable to two persons but which was endorsed only by one. It did not address the issue of whether a bank may refuse to honor a cashier's check, and we accordingly find that it is not controlling in the case at bar.

■ In the light of the above, we hold that Union was without power to stop payment on its cashier's check, and we affirm the trial court in that regard. However, inasmuch as our holding represents a change in the law as expressed in *Bank of Niles v. American State Bank*, upon which Union

apparently relied, we remand this case to permit Union to amend its answer to include as an affirmative defense its claim of a breach of the underlying contractual obligation. (See *Munson v. American National Bank and Trust Co.*) We are persuaded that remandment is necessary in order to determine whether there was a failure of consideration since, from the record, we are unable to make a determination on that issue as a matter of law.

For the reasons stated above, the judgment of the trial court is affirmed; but, for the reasons stated, this cause is remanded for further proceedings consistent with the contents of this opinion.

Affirmed and remanded.

LORENZ and WILSON, JJ., concur.