**BANK ONE, MERRILLVILLE, NA, Plaintiff,**

v.

**NORTHERN TRUST BANK/DuPAGE, Defendant.**

No. 90 C 6447.

United States District Court, N.D. Illinois, E.D.

Oct. 4, 1991.

Ira Bodenstein, Towbin & Zazove, Ltd., Steven H. Kuh, Portes, Sharp, Herbst, Kravets & Fox, Ltd., Chicago, Ill., for Bank One, Merrillville, NA.

Robert Edward Kehoe, Jr., Wildman, Harrold, Allen & Dixon, Chicago, Ill., for Northern Trust Bank/DuPage.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiff, Bank One, Merrillville, NA ("Bank One"), brought this diversity action against defendant, Northern Trust Bank/DuPage ("Northern"), claiming wrongful dishonor of a cashier's check. Northern asserted affirmative defenses and a counterclaim based on fraud, bad faith and misconduct. Bank One has moved, pursuant to Fed.R.Civ.P. 56, for partial summary judgment on the issue of Northern's wrongful dishonor. For the reasons stated in this opinion, Bank One's motion is granted.

### FACTS

This case concerns two banks, Bank One of Merrillville, Indiana ("Bank One") and Northern Trust Bank/DuPage of Oak Brook, Illinois ("Northern"), and two of their customers, Zaragoza Motors Inc. ("Zaragoza") and Sakoff Media Enterprises, Inc. ("Sakoff"). In June 1990, Zaragoza had a checking account at Bank One, while Sakoff had one at Northern.

On or before June 7, 1990 Sakoff wrote a check for $98,581.40 ("the Sakoff check") on its account at Northern, payable to the order of Zaragoza. Zaragoza deposited the Sakoff check in its account at Bank One on June 7, 1990. Bank One sent the Sakoff check to Northern for payment. On June 13, 1990, it was returned to Bank One, as the funds in Sakoff's account were insufficient to cover the amount of the Sakoff check.

Kenneth Dykstra, a Bank One employee, telephoned Northern upon receiving the returned Sakoff check on June 13, and was told that Sakoff's account did contain sufficient funds to cover the check. On the same day, Dykstra drove to Northern's offices and exchanged the Sakoff check for a Northern cashier's check for $98,581.40. When Bank One sent the endorsed cashier's check through the Federal Reserve Bank to Northern for payment, however, Northern refused to honor the check.

The reasons for Northern's refusal to pay relate to another check ("the Zaragoza check"), drawn on Zaragoza's account at Bank One, for $103,200, which Zaragoza presumably transferred to Sakoff at about the same time that Zaragoza received the Sakoff check for $98,581.40. At some point before June 12, 1990, Sakoff deposited Zaragoza's check into Sakoff's account at Northern. Northern then sent the Zaragoza check to Bank One for collection. Bank One received the check on June 12 but, on June 13, issued notice to Northern, through the Federal Reserve Bank, that it was dishonoring the Zaragoza check, because of insufficient funds in Zaragoza's account. This notice did not reach Northern until after Dykstra had obtained the cashier's check. As a result of Bank One's rejection of the Sakoff check, the funds in Sakoff's account were insufficient to cover the Sakoff check for which Northern had issued its cashier's check.

### DISCUSSION

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." According to Bank One, Illinois law forbids a bank from dishonoring its cashier's checks for any reason. On the basis of this understanding of the law, Bank One contends that it is entitled to summary judgment, since any arguments Northern might make and any factual issues they might raise are immaterial to the issue of wrongful dishonor.

In response, Northern asserts bad faith on the part of Bank One. Northern contends that when Dykstra drove to Northern

to obtain the cashier's check, he was aware that his bank was in the process of dishonoring the Zaragoza check. According to Northern, Bank One feared that its dishonor of the Zaragoza check would result in there being insufficient funds to cover the Sakoff check. This fear allegedly prompted Dykstra to hurry to Northern in order to obtain the cashier's check before Northern received notice of Bank One's dishonor. Northern contends that bad faith such as that alleged justifies a refusal to honor a cashier's check, and that the factual issue of Bank One's bad faith precludes summary judgment.

■ The transaction in this case involved an official of an Indiana bank coming into Illinois and receiving a cashier's check from an Illinois bank. Plaintiff, in its brief, assumed the application of Illinois law. Defendant, while citing cases from other jurisdictions, raised no explicit protest. Because the outcome of the case hinges on the applicability of Illinois law, the court must first confirm the parties' implicit choice of law.

In a diversity case, the court must apply the conflict of law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). This case involves a negotiable instrument, so it implicates the Illinois version of the Uniform Commercial Code ("the Code"). Ill.Rev.Stat. ch. 26 ¶ 1-101 *et seq.* The relevant choice of law provision is therefore Ill.Rev.Stat. ch. 26 ¶ 1-105, which provides that the Illinois Code applies to "transactions bearing an appropriate relation to this state." The cashier's check in this case was issued by an Illinois bank to a person in Illinois. The relation of this transaction to Illinois therefore calls for the application of Illinois law.

■ Although the Illinois Code does not specifically address the subject of a bank's cashier's checks, the Illinois Appellate Court interpreted the Code's application to

the issue in *Able & Associates, Inc. v. Orchard Hill Farms of Illinois, Inc., Etc.*, 77 Ill.App.3d 375, 395 N.E.2d 1138, 32 Ill. Dec. 757 (1st Dist.1979). In *Able & Associates*, the court rejected defendant Union National Bank's argument that a failure of consideration justified its refusal to honor a cashier's check. The court instead employed a line of analysis under the Code which led it to endorse "a rule which prohibits a bank from refusing to honor its cashier's checks." *Id.*, 77 Ill.App.3d at 381-82, 32 Ill.Dec. at 761, 395 N.E.2d at 1142.

Characterizing the bank's issuance of a cashier's check as acceptance of the item, the court in *Able & Associates* applied § 4-303 of the Code, which provides that a stop order on a check is ineffective after acceptance.[1] 77 Ill.App.3d at 380, 32 Ill.Dec. at 761, 395 N.E.2d at 1142. As a consequence, under Illinois law, a bank cannot refuse to pay a cashier's check which it has issued. The court in *Able & Associates* viewed its holding as compelled by policy concerns about the negotiability of cashier's checks:

> A cashier's check circulates in the commercial world as the equivalent of cash ... to allow a bank to stop payment on such a check would ... undermine the public confidence in the bank and its checks and thereby deprive the cashier's check of the essential incident which makes it useful.

*Able & Associates*, 77 Ill.App.3d at 382, 32 Ill.Dec. at 761, 395 N.E.2d at 1142, quoting *National Newark & Essex Bank v. Giordano*, 111 N.J.Super. 347, 268 A.2d 327 (1970).

The 1979 ruling in *Able & Associates* relied upon and reflected that of a 1973 Seventh Circuit decision applying Illinois law, *Munson v. American National Bank & Trust Co.*, 484 F.2d 620 (7th Cir.1973). In *Munson*, the Seventh Circuit ruled, as the Illinois Appellate Court later would in

---

1. Code § 4-303 provides, in relevant part: "(1) Any knowledge, notice or stop-order received by ... a payor bank, whether or not effective under other rules of law to terminate, suspend, or modify a bank's right or duty to pay an item ... comes too late to so terminate, suspend or modify such right or duty if the knowledge, notice, [or] stop-order is received ... after the bank has ... (a) accepted or certified the item."

*Able,* that a bank could not assert failure of consideration as an excuse for the dishonor of a cashier's check. The Seventh Circuit applied Code § 4–303, and explained that, as a consequence, a bank has "no more right to countermand its cashier's checks than" it has rights "to refuse to pay cash it has already paid." *Id.* at 623–24.

In both *Able & Associates* and *Munson,* the courts, while holding that the cashier's checks must be honored, permitted the banks to raise their defenses and issues relating to the underlying transactions as part of their own affirmative claims. *Able & Associates,* 77 Ill.App.3d at 382–83, 32 Ill.Dec. at 761–62, 395 N.E.2d at 1142–43; *Munson,* 484 F.2d at 624. The defendants in both cases had to pay the cashier checks, and then seek to recover the funds from the hands of the plaintiffs just as they would as if they had paid cash.[2]

■ In the face of this case law which holds that a bank has no right to dishonor its cashier's checks but must instead assert its reason for non-payment as part of its own action to recover the funds, Northern essentially argues for a "bad faith" or "fraud" exception to the general principle. Northern reasons that, while Illinois courts have held that failure of consideration is no excuse for dishonoring a cashier's check, they have never ruled that the procurer's bad faith does not provide a defense. (Defendant's Memorandum at 6.)

In support of the distinction, Northern argues that "better authority for the law that governs this particular situation" appears in cases which hold that banks can refuse to honor cashier's checks obtained through fraud. (Defendant's Memorandum at 6.) Defendant then cites cases such as *Farmers & Merchants State Bank v. Western Bank,* 841 F.2d 1433 (9th Cir.

1987) and *TPO, Inc. v. Federal Deposit Insurance Corp.,* 487 F.2d 131, 135–36 (3rd Cir.1973) as authority for its argument.[3]

These cases interpret the UCC in a way that enables a bank to stop payment on a cashier's check in case of fraud, and thereby support defendant's position. This court, however, could not rely on the authority cited by Northern even if it were persuasive. As stated earlier in this opinion, this diversity case must be decided according to Illinois law. The interpretation of the UCC found in the cases cited by Northern, which grants a bank the power to stop payment on its cashier's checks, is, however, directly and explicitly contrary to the law articulated by Illinois courts.

As previously discussed, Illinois courts view an issued cashier's check as accepted under Code § 4–303 and as the equivalent of cash. In *Farmers & Merchants State Bank,* however, the Ninth Circuit rejected the approach taken in *Able & Associates,* concluding that § 4–303 "had no bearing on the question whether [a bank] may assert its own defenses to liability on its cashier's check," *Farmers & Merchants State Bank,* 841 F.2d at 1451. The Ninth Circuit cited the Seventh Circuit's *Munson* opinion as an opposing view. *Id.* at 1440 n. 11. Likewise, in *TPO, Inc. v. Federal Deposit Insurance Corporation,* the Third Circuit expressly spurned the § 4–303 "acceptance" mode of analyzing the issuance of cashier's checks. *TPO,* 487 F.2d at 135–136.

The Ninth Circuit, in *Farmers & Merchants State Bank,* also explicitly eschewed the notion, adopted in Illinois, that certified checks must be viewed as cash equivalents, reasoning that "nothing in the U.C.C. suggests that cashier's checks should be treated differently from other

---

**2.** In *Munson,* the bank's counterclaim for a set-off was ripe for summary judgment, which the court granted. The plaintiff's success on the wrongful dishonor issue was therefore empty, since it simultaneously lost on the issue of liability in the underlying transaction. In *Able & Associates,* the court, after resolving the cashier's check issue, remanded for determination of the bank's affirmative claim regarding the underlying transaction.

**3.** The defendant also cites other cases to support its argument. *Anderson, Clayton & Co. v. Farmers National Bank of Cordell,* 624 F.2d 105 (10th Cir.1980); *Banco Di Roma v. Merchants Bank of New York,* 92 A.D.2d 42, 459 N.Y.S.2d 592 (1983); *Gates v. Manufacturer's Hanover Trust Co.,* 98 A.D.2d 829, 470 N.Y.S.2d 492 (1983). These cases either rely on the cases discussed at pp. 269–270 of the opinion or utilize the same interpretation of the UCC.

instruments subject to Articles 3 and 4." *Farmers and Merchants State Bank*, 841 F.2d at 1440. Similarly, the Third Circuit, in *TPO*, explained its view that a cashier's check "is equivalent to a negotiable promissory note of a bank.... not the same as cash as has been loosely asserted." *TPO*, 487 F.2d at 136.

The rejection by the non-Illinois courts of the "acceptance" and "cash equivalency" treatment of cashier's checks leads directly to their recognition of a bank's ability to stop payment in the case of fraud. Having concluded that issuance of a cashier's check is not acceptance under § 4–303 and that a cashier's check is not necessarily equivalent to cash, the courts, not applying Illinois law, were free to analyze the check as they would any other negotiable instrument, in terms of whether the plaintiff seeking payment was a holder in due course. If the plaintiff in a wrongful dishonor action is guilty of fraud, he would not be a holder in due course. Consequently, under § 3–306, the bank would be entitled to present all defenses which would be available on a simple contract such as lack of consideration or fraud. *Farmers & Merchants State Bank*, 841 F.2d at 1442; *TPO*, 487 F.2d at 136.

The holding and reasoning of *Able & Associates* clearly indicates that Illinois courts have adopted the § 4–303 acceptance and cash equivalency method of analyzing cashier's checks, not the holder in due course analysis exhibited in the cases cited by Northern. Indeed, the Illinois Appellate Court, in *Able & Associates*, explicitly considered and rejected the approach taken by the Third Circuit in *TPO*.[4] *Able & Associates*, 77 Ill.App.3d at 380–82, 32 Ill.Dec. at 759–60, 395 N.E.2d at 1140–41. This court cannot accept Northern's attempt to avail itself of the defenses to dishonor provided by the Third and Ninth Circuit's interpretations of the UCC because Illinois law, which applies in this case, contradicts the theory of cashier's checks upon which they, and Northern, rely.

As a consequence of the application of Illinois law to the subject of cashier's checks, Northern, under § 4–303, can raise no excuse "whether or not effective under other rules of law" justifying its refusal to pay.[5] The proper context for Northern's arguments regarding Bank One's alleged bad faith is its counterclaim rather than as a defense to Bank One's action for wrongful dishonor. Unfortunately for Northern in this case, its claim concerning the underlying transaction is not yet ready for judgment.[6]

Northern therefore must honor its cashier's check and seek to recover the funds in the hands of Bank One, just as it would have to do if it had paid cash. Under Illinois law, Northern assumed the risk of having to pursue litigation to recover improperly paid funds when it issued the cashier's check. This result, which is dictated by Illinois law, serves the interest of preserving the free negotiability of cashier's checks while at the same time affording Northern the opportunity to remedy what it views as a wrong.

---

4. The diverging approaches taken in the various opinions reflects a wider split of authority regarding the character of cashier's checks, between courts that take the § 4–303 approach, viewing an issued cashier's check as accepted, and those that view cashier's checks as being subject, in the same way as other negotiable instruments, to the defenses of § 3–305 and § 3–306, such as lack of consideration and fraud. *See DaSilva v. Sanders*, 600 F.Supp. 1008 (D.D.C.1984) (discussing split of authority and citing cases); L. Lawrence, *Making Cashier's Checks and Other Bank Checks Cost Effective: A Plea for Revision of Articles 3 and 4 of the Uniform Commercial Code*, 64 Minn.L.Rev. 275, 285–320 (discussing different approaches).

5. In addition to its arguments based on Bank One's alleged bad faith, Northern raises an argument premised on its contention that Bank One suffered no damage as a result of the cashier check's dishonor. (Defendant's Memorandum at 7–8.) This argument is grounded in principles of contract law concerning the underlying transaction. Therefore, like the bad faith arguments, it is irrelevant to the controlling principle that a bank must honor its cashier checks.

6. As Northern has not yet paid the cashier's check, its counterclaim requests only incidental damages. Now that it must honor the check, Northern may, before the date set for the next status report in the case, amend its counterclaim to allege damages it suffers thereby.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment is GRANTED. The parties are urged to discuss settlement. The case is set for status on October 23, 1991 at 10 a.m.